No. 19,272.

IRIS ELAINE SNIEZEK *v.* JAMES S. CIMINO, ETC., ET AL.
(360 P. [2d] 813)

Decided April 3, 1961.

Messrs. MURPHY and MORRIS, for plaintiffs in error.

Messrs. JANUARY, GILCHRIST & BLUNK, for defendants in error James S. Cimino and Angelo M. Cimino, d/b/a Star Neon Company.

Messrs. TARTER and TARTER, for defendants in error George Blair, Jr. and June Blair.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

PLAINTIFF in error, Iris Sniezek, seeks review of adverse judgments of the district court in actions instituted by her against James and Angelo Cimino, the owners of the Star Neon Company, and George and June Blair as owners of the Air Point Hotel. Plaintiff brought an action as widow of John W. Sniezek, deceased, to recover damages for his wrongful death by electrocution occurring during the course of repair work he was performing

at the hotel. The trial court directed a verdict in favor of the Blairs and submitted the case against the Ciminos to the jury. A verdict was returned in favor of the Ciminos. The present writ of error is to review both the judgment on the verdict and the judgment directing a verdict. The parties will be referred to as they appeared in the trial court or by name.

The injury and death upon which the present action is founded occurred on July 18, 1959. At that time the deceased was employed by the Link Neon Company and had gone to the Air Point Hotel to repair broken neon tubing. The only witness to the occurrence was one Dalton Bartlett, a co-employee of decedent. At the time of the accident, Bartlett was engaged in installing bulbs on a sign in the front of the hotel. At the same time decedent was standing on a ladder on the south side of the hotel installing neon tubing. After completing the installation, decedent again ascended the ladder to see whether it was operating. Bartlett became aware of the injury when he heard a groan. Upon going to see what had happened he observed the decedent with his hand stuck on the eave trough trying to get loose. Bartlett immediately ran and turned off the electricity, but when he returned decedent had fallen to the ground. Deceased was removed to a hospital and died shortly thereafter.

The testimony established that his death was due to electrocution. According to the testimony of Bartlett, he afterwards examined the place where the injury occurred, and saw a burned spot on the eave trough where decedent's hand had been and also saw a wire touching the eave. He further testified that the Link Company made it a practice to use aluminum ladders in the performance of electrical work. On cross examination, Bartlett testified that decedent had said he was going to take a jumper wire with him when he went up the ladder. He saw such a wire on the roof when he looked at the place after the accident. This jumper wire

was 8 feet in length and had the insulation removed from each end and was used in testing neon tubing. It was applied to ascertain which section of the tubing was burned out.

The grounds on which the plaintiff in error seeks reversal may be summarized as follows:

1. That it was error for the trial court to direct a verdict in favor of the Blairs because it is said that the Blairs violated a duty owed to Sniezek to exercise reasonable care to protect him from hazards which existed on the premises — that reasonable minds could differ as to whether the Blairs should have discovered the peril and should have remedied it or warned the decedent of its existence.

2. Other alleged errors pertain to conduct of the trial. It is said that the trial court erred in receiving the following testimony:

a. The cross examination of the coroner as to a comparative electrocution case which he had investigated that very day.

b. Allowing the defendant James Cimino to testify as an expert on whether the downspout could be charged with electricity. On this, it is said that Cimino was not qualified as an expert.

c. Receiving testimony of Cimino as to the scale of wages paid his employees.

d. In allowing the witness Bridgewater to testify as an expert on electricity.

e. In refusing to submit various of the plaintiff's tendered instructions.

I.

*Did the court commit error in directing a verdict in favor of the Blairs?*

It is noteworthy that the Blairs acquired this property on January 20, 1958, some six months prior to the date of the unfortunate occurrence in question. The neon sign had been installed prior to the date of their acquisition. Some time early in July 1958 they called

the Link Company to repair the neon installation following a hail storm. The Link Company had been called on three occasions prior to the incident for the purpose of making repairs. The Blairs did not purport to know anything about neon signs, and they seemingly depended upon the repairman. Repairs were commenced on the evening of July 4 and between the 4th and 18th of July the employees of the Link Company were there four or five times, and the decedent himself had been there several times, sometimes working with the electricity turned on and sometimes with it turned off. It was shown that he had been on the roof before the incident.

■ ■ The first inquiry pertains to the relationship between the Blairs and decedent, and it would seem that he had the status of an invitee. See *Field v. Sisters of Mercy*, 126 Colo. 1, 245 P. (2d) 1167; *Great Western Sugar Co. v. Parker*, 22 Colo. App. 18, 123 Pac. 670, Prosser, *Torts* 453 (2d ed. 1955); 2 Harper and James, *Torts* 1481 (1956). But even though an invitee status be recognized, it does not follow that the landowner is liable merely because of the existence of a peril about which he failed to warn or which he failed to remove. See *King Soopers, Inc. v. Mitchell*, 140 Colo. 119, 342 P. (2d) 1006; *John Thompson Grocery Co. v. Phillips*, 22 Colo. App. 428, 125 Pac. 563. Such owner can only be held responsible for those hazards about which he knows or should have, as a prudent man, discovered. In the case at bar, had the roof been accessible to the Blairs and had they made an investigation it would not have altered the situation, since their knowledge is not shown to have been sufficient to detect the danger or warn the decedent or his employer of the hazard. Some difficulty had occurred with the neon sign which they desired to have repaired. Their employment of the Link Company was for this very purpose, and they necessarily entrusted such technical matters to trained electricians. As to the specific hazard which produced the injury and death,

it is noteworthy that it did not become manifest until the day of the accident when the decedent scaled the ladder, a procedure he had followed the day before without incident. Under such circumstances, we conclude that the Blairs were not guilty of any imprudent action and therefore are not legally responsible. Inasmuch as there was no factual theory posed by the evidence on the basis of which a finding could have been made by the jury of negligence on the Blairs' part, we consider the ruling of the trial court a proper one.

## II.

*Did the trial court err in refusing to give plaintiff's tendered instructions 1 through 5?*

 We have compared the requested instructions with those given by the court and are unable to perceive any prejudice growing out of the court's refusal to instruct in accordance with the specific request. The subject considered in each of the tendered instructions was covered in the court's instructions with the exception of tendered instruction No. 3, which told the jury of a presumption that the decedent exercised care for the preservation of his life, and this latter we do not think was either correct or appropriate.

## III.

*Did the court err in failing to sustain plaintiff's objections to certain cross examination of the witness, Dr. Urich?*

This witness examined the deceased at the scene of the accident and the following questions were propounded and answers were given:

"Q. You didn't make any inquiry as to anyone who could have been present with the decedent? A. No, sir, the decedent's body had been moved at the time I was on the scene. I was on a call at the Air Force Academy. They had moved his body, taken it to Glockner Hospital. Q. What was the nature of your call at the Air Force Academy? Mr. Morris: Just a minute. What materiality, competency, or relevancy does that have in this case?

The court: What does that have to do with this case?

\* \* \*

"Mr. Gilchrist: I would like to find out from this testifying doctor what he had been doing when he was on his way to make this call, Your Honor. The Court: Objection overruled.

\* \* \*

"A. Pronounce a worker, who had been electrocuted, dead. Q. A worker who was killed during the construction of the Academy; was that worker also electrocuted? A. He was, yes."

█ Special emphasis is placed upon allowing this witness to testify to another electrocution on the ground that an impression was created that such hazards were normal occupational hazards. While we do not believe this evidence was material to the issues being tried, we are not convinced from our study of the record that the trial court committed prejudicial error in allowing the questions to be asked and the answers to be given. Their immateriality is readily apparent and it is doubtful that the jury would gain the impression which defendants say is likely. See Rule 118 (f), Colorado Rules of Civil Procedure, requiring this Court to "\* \* \* disregard any error or defect not affecting the substantial rights of the parties." See also *Baker Metropolitan Water and Sanitation District v. Baca,* 138 Colo. 239, 331 P. (2d) 511; *Biggs v. Biggs,* 78 Colo. 310, 241 Pac. 539.

IV.

*Was it error to allow defendant Cimino to give his opinion on the conductivity of the rain downspout?*

█ The determination whether a witness has sufficient qualifications to justify an expert opinion is within the discretion of the trial court. *Bridges v. Lintz,* 140 Colo. 582, 346 P. (2d) 571. How the opinion thus given could be prejudicial is not apparent since the undisputed evidence established that the injury occurred when the decedent came in contact with the trough along the edge of the roof.

## V.

*Was it error to allow defendant's witness, Bridgewater, to testify as an expert on whether there was sufficient amperage to cause electrocution?*

The main objection to the testimony of this witness goes to his qualifications. Bridgewater was shown to be the holder of a "B" electrician's license, and testified that he had worked with neon lighting systems for 30 years. He lacked formal engineer training which would have allowed him to correlate electrical shock trauma to the human body. Here again we are constrained to hold that the question of whether the witness was sufficiently qualified was a matter in which the trial court had discretion; and the evidence being sufficient to justify the trial judge in ruling that his opinion was competent, no abuse of discretion was shown and no basis for reversal on that ground.

Other errors are alleged, but none merit specific attention and treatment.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE MCWILLIAMS concur.