No. 45,830

EDWARD ASPELIN, and ORAL WEEKS, *Appellants*, v. R. J. MOUNKES, a/k/a ROBERT J. MOUNKES, *Appellee*, and FARM BUREAU MUTUAL INSURANCE COMPANY, *Defendant.*

(476 P. 2d 620)

Opinion filed November 7, 1970.

*David H. Heilman,* of Council Grove, argued the cause and was on the brief for the appellants.

*George Forbes,* of Emporia, argued the cause, and *Thomas A. Krueger* and *Roy U. Jordan,* both of Emporia, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is a negligence action for personal injuries sustained by two persons in a fall from a barn which they were reroofing at the defendant owner's request.

Separate claims filed by the plaintiffs were consolidated and

heard in trial to the court. At the conclusion of plaintiffs' evidence the trial court sustained that which has been denominated throughout as a motion for summary judgment. Plaintiffs have appealed.

Appellants' evidence revealed the following: Appellee Mounkes, who was seventy-eight years of age, owned two barns whose roofs needed repair. Upon a neighbor's recommendation he contacted appellant Weeks, who had been engaged in full-time carpenter work for thirty-five to forty years, first as an employee for a contractor, then for himself. Weeks, accompanied by appellant Aspelin, thereafter came to appellee's farm to look over and talk about the job. Aspelin had been engaged in carpenter work for about five years and on various occasions had previously worked for Weeks. The testimony was that appellee "wanted to hire us to fix them roofs for him . . . he wanted a new tin [roof] put on those buildings". As a result of the conversation appellants were to put on the roofs as soon as they could get to it. Weeks figured the amount of material to be used. Appellee was to pay for all material and pay appellants on an hourly basis. Appellants were to furnish all tools necessary, including ladders.

On August 2, 1967, at about 7:30 a. m. appellants came to the barn in question for the purpose of repairing its roof. They were accompanied by Aspelin's sixteen year old son Charles who had been hired by Weeks to help them. Appellant Aspelin commenced unloading the material while Weeks went on the roof by means of a ladder. The roof was covered with shingles. Along its length where the two sides of the roof joined there was a metal strip called a ridge row. Weeks made an inspection and pulled some of the nails out of the ridge row. The ridge row was rusty and the nails were not solidly in the boards. The ridge row had been installed in ten foot lengths commencing at the south end of the barn; however, at the north end the last section was only four feet long. After Weeks had inspected the roof he reported to appellee what he had learned about the ridge row, saying,

"We are going to have to have a new ridge row there, because . . . that one is not in good shape. . . ."

Weeks also told appellee he didn't think the roof was too safe but he couldn't tell; it looked unsafe. He said the ridge row wasn't long enough, it wasn't nailed securely and would not be safe and he thought they should have another one. Appellee responded he

would go get a new ridge row right away and the workmen should go ahead. Appellee indicated he would be right back. Appellant Aspelin was not present when this conversation occurred but Weeks told him about it after the two climbed upon the roof. After appellee left appellants proceeded with the roofing work, putting on the tin. The Aspelin youth remained on the ground, handing up material. Appellants completed the east side of the barn. Their ladders had hooks on one end designed to hold them on the roof. When the ladders were laid down on the roof the hooks extended over the opposite side of the ridge row and against the other side of the roof. The opposite side of the ridge row remained nailed down while the side upon which tin was being applied was loosened so that the tin could be beaten under it; that side of the ridge row was then nailed down.

Appellants next started on the west side of the roof, commencing at the south end where the ridge row was in ten foot lengths and working northward. They had nearly finished the job when the four foot ridge row pulled loose, permitting the ladders to slide down the roof. Both appellants fell to the ground and were injured. At the time they fell appellee had not yet returned but he did return shortly thereafter, while the two were still lying on the ground.

In sustaining the motion for judgment the trial court made the following findings:

"Under the evidence in this case, it is the opinion of the court that the plaintiffs were not employees of defendant. Assuming, for the purpose of illustration, that master-servant relationship existed, it is the opinion of the court that the injuries sustained by the plaintiffs resulted from risks incident to their employment, and the employer is not liable therefore, Convoy versus Crofoot, 194 Kansas 46. The court further finds that the evidence failed to show the defendant was negligent in any manner."

The parties have treated the motion made by appellee at the conclusion of appellants' evidence as one for summary judgment. Appellants urge application of familiar rules respecting disposition of such motions. Appellee's grounds for the motion were that upon the facts and the law appellants as plaintiffs had shown no right to relief. Actually, then, despite the misnomer, the motion was one for involuntary dismissal under K. S. A. 1969 Supp. 60-241 (b). The scope of the trial court's authority in such a situation was stated in *Mackey-Woodard, Inc. v. Citizens State Bank*, 197 Kan. 536, 419 P. 2d 847, as follows:

"Where the defendant in an action tried to the court without a jury moves for involuntary dismissal of the action at the close of the plaintiff's case pursuant to the provisions of K. S. A. 60-241 (*b*), based on the ground that upon the facts and the law the plaintiff has shown no right to relief, the trial judge has the power to weigh and evaluate the evidence in the same manner as if he were adjudicating the case on the merits and making findings of fact at the conclusion of the entire case. . . ." (Syl. ¶ 7.)

The trial judge made the requisite findings in support of its ruling pursuant to 60-241 (*b*) and 60-252 (*a*). In reviewing that action we are limited by the further rule in 60-252 (*a*) which directs that the trial judge's findings of fact shall not be set aside unless clearly erroneous (*Mackey-Woodard, Inc. v. Citizens State Bank*, supra).

If any of the trial court's findings are sustainable then its judgment must be upheld as each is dispositive as the lawsuit has been framed. Appellants alleged and sought to prove they were employees of the appellee and their only ground of negligence is failure to furnish a safe place to work. In effect they concede that to avail themselves of this ground of negligence, if at all, they must prove they were employees of appellee rather than independent contractors. This position is apparently taken in recognition of the rule an owner of premises is under no duty to protect an independent contractor from risks arising from or intimately connected with defects in the premises which the contractor has undertaken to repair (see 41 Am. Jur. 2d, Independent Contractors, § 28; also anno. 31 A. L. R. 2d 1375, 1381-1383).

We turn first to the question whether appellants were employees or independent contractors. In *Pottorff v. Mining Co.*, 86 Kan. 774, 122 Pac. 120, this definition appears:

"An independent contractor generally is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to the result of his work." (Syl. ¶ 2.)

This court has often been called upon to review a determination as to whether an individual was an employee or an independent contractor. The problem most frequently arises in workmen's compensation cases and is well summarized in *Jones v. City of Dodge City*, 194 Kan. 777, 402 P. 2d 108, in the following statement:

"It is often difficult to determine in a given case whether a person is an employee or an independent contractor since there are elements pertaining to both relations which may occur without being determinative of the relationship. In other words, there is no exact formula which may be used in determining if

one is an employee or an independent contractor. The determination of the relation in each instance depends upon the individual circumstances of the particular case.

"The primary test used by the courts in determining whether an employer-employee relationship exists is whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of control by the employer but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor." (p. 780.)

In *Phillips Pipe Line Co. v. Kansas Cold Storage, Inc.,* 192 Kan. 480, 389 P. 2d 766, one issue was whether a certain individual was an employee or an independent contractor. A landowner hired the person to clean silt out of a drainage ditch at a specified rate of pay per hour. No directions were given as to how the work was to be done and it was done by the workman with his own equipment according to his own methods. In determining as a matter of law that the relationship was that of independent contractor, this court stated:

"At most, Phillips' evidence disclosed that Wirth entered into a contract with Steele whereby Steele was to clean the silt out of the north drainage ditch at a predetermined rate per hour. Nothing else was said; no specifications were given, and the manner in which the work was to be done was left entirely up to Steele. While Phillips' evidence was that Wirth inspected the work and conversed briefly with Steele's employee Southworth, it can by no means be inferred that he reserved the right to direct and control the means or method of performing the work. Wirth's and the appellant's interest was in the result of the undertaking, that is, having the ditch cleaned of silt rather than in the particular method or means by which it was accomplished, and as previously indicated, no right of control was retained by Wirth on his behalf or the appellant's behalf.

"The appellee suggests that since Steele was to be paid at an hourly rate for the work, this was strong evidence of an employer-employee relationship existing between Wirth, the appellant, and Steele. The point is not well taken. In *Smith v. Brown,* 152 Kan. 758, 107 P. 2d 718, evidence of payment at an hourly rate for services was introduced in support of an employer-employee relationship, but this court determined that the general law was applicable; that it was the question of the right of control which determined the relationship and affirmed the trial court's order sustaining a demurrer to the plaintiff's evidence." (pp. 485-486.)

In the case at bar we think the evidence clearly demonstrates appellants were independent contractors as defined by the authority cited. They entered into an oral contract with appellee to reroof the latter's barns with certain material at an agreed

rate of pay. Nothing more was said. No directions were given as to how the work was to be performed. The manner of its performance was left entirely to Weeks, whom appellee had contacted and selected because he had been recommended as a carpenter who knew his business. There was no evidence of any control or direction being retained in appellee. His interest was in the result—having his barn reroofed.

We likewise must agree with the trial court's conclusion that if the master-servant relationship were held to exist, then appellants were injured as a result of risks they assumed incident to their employment. The evidence was that Weeks knew of the defective condition which caused the fall and it was undisputed he conveyed this information to Aspelin prior to their injury. Both were experienced carpenters whose task, in fact, was to remedy the known defect, to correct the precise condition which caused the injury. The evidence further revealed there were alternate methods of fastening a ladder upon the roof while repairing it, which would have been safe. Appellants chose the method and the tools used. The defects principally complained of in the ridge row were in the north end, where the accident actually occurred. Weeks' estimate was "I just figured it was a small place here that was bad," and unfortunately this turned out to be a correct assessment.

In view of the foregoing we need not further consider the issue of appellee's negligence.

Two matters remain for consideration. First, appellants sought to introduce a portion of a deposition of appellee taken by appellants. Appellee made a general objection which the trial court sustained for the reason, "Depositions can only be used for the purpose of impeachment."

Appellants failed to make a proffer before the trial court of that which they expected to show by the deposition; however, in view of the reason given in sustaining the objection any proffer may well have been futile. From the record before us it appears the deposition was offered to show an admission against interest upon the element of right to control, albeit in the form of a conclusion. An opponent's sworn statement, though called a deposition, is no less an admission than any other statement of his. A deposition of a party containing an admission against interest is admissible, and always has been, regardless of whether the party is present at the trial, or absent from the jurisdiction (Gard,

Kansas Code of Civil Procedure, anno., § 60-226, p. 139). In *Taylor v. Maxwell*, 197 Kan. 509, 419 P. 2d 822, we pointed out that K. S. A. 60-226 (*d*) (2) specifically authorizes the use by an adverse party, for any purpose, of a deposition of a *party*, without regard to the limitations applicable generally to the deposition of witnesses offered by either party.

The trial court erred in not admitting the deposition into evidence; however, in view of later events, we believe this ruling was not prejudicial. After the trial court had excluded the deposition appellants called appellee to the witness stand to testify as a part of their case in chief. Appellants made no attempt, as they could have, to elicit testimony from appellee similar to that contained in the deposition. No reason is advanced or is apparent for this omission. We believe appellants' failure to elicit testimony considered relevant rendered harmless the error in the prior ruling. Moreover, we have examined the excluded testimony now proffered in the record upon appeal and are convinced its reception and full consideration could not in any event have changed the conclusion that appellants were employees and not independent contractors.

Finally, appellants complain of the trial court's action, over their objection, in consolidating the two cases for trial. Appellant Aspelin particularly argues he was prejudiced in the joinder because different issues were present as to him inasmuch as he had no knowledge of the defective condition of the roof. We have already indicated the undisputed evidence to the contrary on this issue. K. S. A. 1969 Supp. 60-242 (*a*) provides that when actions involving common questions of law or fact are pending before the court, the judge may order the actions consolidated and may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Consolidation of two or more pending actions lies in the sound discretion of the trial court. We find no abuse of that discretion here. The consolidating order was not made until after jury trial had been waived by appellants, and after it had been determined at pretrial conference that, except for medical evidence, the evidence upon the liability issue would be the same for both appellants. No prejudice to the rights of either appellant resulted.

Judgment affirmed.

APPROVED BY THE COURT.