Jean Marc **GUIGNET**, Plaintiff,

v.

**LAWRENCE PAPER COMPANY, INC.**, Defendant.

Civ. A. No. 93–2260–GTV.

United States District Court, D. Kansas.

July 28, 1994.

---

Jerry K. Levy, Law Offices of Jerry K. Levy, Lawrence, KS, for plaintiff.

Barry E. Warren, Wallace, Saunders, Austin, Brown & Enochs, Overland Park, KS, William H. Colby, Shook, Hardy & Bacon, Kansas City, MO, and Matthew D. Keenan, Shook, Hardy & Bacon, Overland Park, KS, for defendant.

### *MEMORANDUM AND ORDER*

VAN BEBBER, District Judge.

This matter is before the court on defendant Lawrence Paper Company, Inc.'s ("Lawrence Paper") motion for summary judgment (Doc. 28). For the reasons set forth below, Lawrence Paper's motion is granted.

This diversity jurisdiction case arises out of injuries plaintiff sustained on defendant's premises while performing mechanical work on a machine manufactured by plaintiff's employer. A paper jam occurred while plaintiff was checking the machine, a die cutter used in manufacturing corrugated paper boxes. Plaintiff attempted to clear the paper jam, but while doing so the machine began running. Plaintiff was injured when his left arm was caught in the machine.

Plaintiff alleges that defendant Lawrence Paper was negligent in failing to properly maintain the machine. Specifically, plaintiff contends that a safety device which plaintiff relied on while clearing the paper jam was inoperable due to a small burr on the device

which defendant should have discovered and repaired. Plaintiff further alleges that a warning horn intended to sound before the machine starts running was also inoperable due to improper maintenance.

In its summary judgment motion, defendant claims that it owed no duty to plaintiff because plaintiff and plaintiff's employer possessed superior knowledge about the machine, and plaintiff and his co-workers had inspected and serviced the machine immediately prior to the accident.[1]

## I. Legal Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing," that is, pointing out to the district court, that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, "a party opposing ... may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

The substantive law regarding a claim will identify which facts are material in a motion for summary judgment, and only factual disputes that might affect the outcome of the case under governing law will preclude entry of summary judgment. *Id.* at 248, 106 S.Ct. at 2510. In applying this standard, the court views the evidence, and all reasonable inferences derived from the evidence, in the light most favorable to the party opposing the motion. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

■ This is a diversity case which is governed by Kansas law. The court must ascertain and apply Kansas law in order to reach the same result that Kansas courts would reach. *Adams–Arapahoe Sch. Dist. No. 28–J v. GAF Corp.,* 959 F.2d 868, 870 (10th Cir.1992).

## II. Relevant Facts

■ The following facts are either uncontroverted or, where controverted, construed in the light most favorable to the non-movant plaintiff. Immaterial facts and factual averments not properly supported by the record are omitted. Defendant has responded to a number of plaintiff's proposed uncontroverted facts by simply stating that the facts were controverted, without offering any explanation or support from the record on which defendant relies. These facts will be deemed admitted for the purpose of summary judgment if the record adequately supports them.

Plaintiff Jean Marc Guignet, at the time of his injury on July 29, 1991, was an employee of Bobst Group, Inc. Mr. Guignet began his employment with Bobst in 1978 or 1979 as a precision machinist. He served an apprenticeship and became a field service technician in 1981. At the time of the accident he was at Lawrence Paper in Lawrence, Kansas, to perform mechanical work on a die cutter machine, referred to as SPO 1575–EEG, which Lawrence Paper owned and operated and which had been manufactured by Bobst. A separate machine, called a Flexo, is connected to the die cutter. The two machines are connected as one unit and interrelated by circuitry.

1. Defendant also contends that because plaintiff has no expert witness to testify concerning causation and because causation in this case is beyond the comprehension of the ordinary lay person, plaintiff cannot prove causation by a preponderance of evidence as required. Because the court grants summary judgment based on defendant's first argument, this issue will not be addressed.

On June 17 and June 18, 1991, Bobst technician Joe Morris was at Lawrence Paper to check the die cutter and Flexo to identify the repairs and parts needed to bring the unit into good working condition. A second Bobst employee, electrician Robert West was present at Lawrence Paper on July 1, 2, and 3, 1991, to work on the Flexo. When Mr. West arrived at Lawrence Paper he discussed the machine's problem with Lawrence Paper personnel and he learned that someone's hand had been pinched in the Flexo end of the unit. According to Bobst policy, both Mr. Morris and Mr. West were to have checked all safety devices on the unit, including the safety gate at the delivery end of the machine, prior to leaving the job.

Mr. Guignet was sent to Lawrence Paper to rebuild the die cutter machine, and arrived there on Monday, July 22, 1991. The job was to last about one week. Mr. Guignet worked on the machine every day from July 22 through July 27, 1991. The machine was operational on July 27. Mr. Guignet observed that the machine was operating properly, but he did not perform a complete check of every safety. He returned to Lawrence Paper on Monday July 29, 1991, in order to observe the machine run with paper and to complete the safety check. Bobst procedures called for field technicians and electricians to check all safety devices at the completion of any job.

When Mr. Guignet arrived at the machine on July 29, the operator, who was setting up for a job, told Mr. Guignet that something was wrong with the delivery. Mr. Guignet attempted to feed some paper through the machine, but the first sheet jammed. While he was removing the paper jam, the machine suddenly started up at almost full speed and trapped his arm in the machinery. At the time of the accident, Mr. Guignet had fully opened a safety gate, which when functioning properly, renders the machine non-operational.

Mr. Guignet did not check the machine's safety gate before he reached in to clear the paper. During the week that he had worked on the machine he would have had occasion to use the safety gate and the gate functioned to his satisfaction. The machine oper-

ator is responsible for insuring that all safety guards are operational before starting the machine.

The operator of this unit had been previously injured when his hand was pinched in the Flexo after the machine unexpectedly sped up. As a result of this accident, Bobst sent its electrician to Lawrence Paper to work on the Flexo during the period July 1 through July 3, 1991. Plaintiff had not been informed about this accident.

After plaintiff was injured, Bobst sent an electrician and senior field service technician to examine the machine. The technician discovered that one guard was inoperative, and that the grill could be pushed open without stopping the machine because of a burr on the small wheel at the end of the switch. When this burr was in a particular position it signalled the machine that the gate was closed even though it was in fact open. The electrician observed that the cabinet containing the electrical controls for the machine was in a state of disrepair and neglect and that modifications had been made which were not authorized by Bobst. A safety grill had also been modified using parts not supplied or recommended by Bobst. Finally, the control panel had been modified to remove a safety key switch which was one of the methods to disable the machine before working on it.

### III. Analysis

Defendant first argues that it owed no legal duty to plaintiff. In order to recover for negligence, plaintiff must show that Lawrence Paper owed him a duty which was breached. *Koplin v. Rosel Well Perforators, Inc.*, 241 Kan. 206, 734 P.2d 1177 (1987). Further, this breach of a legal duty must be the proximate cause of injury to the plaintiff. *Baker v. City of Garden City*, 240 Kan. 554, 731 P.2d 278, 280 (1987). The existence of a duty is a question of law for the court to determine. *Durflinger v. Artiles*, 234 Kan. 484, 673 P.2d 86, 91 (1983). Further, "[a]n accident which is not reasonable to be foreseen by the exercise of reasonable care and prudence is not sufficient grounds for a negligence action." *Id.*

Plaintiff, as an employee of Bobst, an independent contractor employed by defendant to perform services for defendant's benefit and Bobst's financial gain, was clearly on defendant's premises as a business invitee. *See Hendrix v. Phillips Petroleum Co.,* 203 Kan. 140, 146, 453 P.2d 486, 492 (1969). As such, defendant would ordinarily owe plaintiff a duty to exercise reasonable or ordinary care to protect plaintiff against any danger that may be reasonably anticipated. *See Graham v. Loper Electric Co.,* 192 Kan. 558, 561–62, 389 P.2d 750 (1964).

As an exception to this general rule, however, an owner is under "no duty to protect an independent contractor from risks arising from or intimately connected with defects in the premises," or machinery located on the premises, which the contractor has undertaken to repair. *Aspelin v. Mounkes,* 206 Kan. 132, 135, 476 P.2d 620 (1970). The *Aspelin* Court recognized this exception in the process of determining that two persons injured when they fell from the roof of a barn were independent contractors rather than employees. Because their injuries resulted from risks incident to the repairs they were making to the roof, the owner owed them no duty and the court held that their negligence claims were properly dismissed.

This exception, applicable to defects related to the item which the contractor was hired to repair, has been recognized by other jurisdictions. *See, e.g., Vest v. National Lead Co.,* 469 F.2d 256 (8th Cir.1972) (applying Missouri law); *Anicet v. Gant,* 580 So.2d 273 (Fla.Dist.Ct.App.1991); *Wingett v. Teledyne Indus., Inc.,* 479 N.E.2d 51 (Ind.1985); *Diamond Int'l Corp. v. May,* 445 So.2d 832 (Miss.1984); *Chance v. Dallas County,* 456 So.2d 295 (Ala.1984); *Palenscar v. Michael J. Bobb, Inc.,* 439 Pa. 101, 266 A.2d 478 (1970); *Grills v. Pepsi–Cola Bottling Co. of New London, Inc.,* 151 Conn. 627, 201 A.2d 185 (1964); *Sniezek v. Cimino,* 146 Colo. 119, 360 P.2d 813 (1961). These courts have generally recognized that the duty owed to an invitee is based on the proposition that an owner has, or at least should have, superior knowledge of the dangers related to the premises. *See Wingett,* 479 N.E.2d at 54. That assumption, however, loses its validity

when the owner has summoned the invitee onto the premises specifically to repair some defect or condition about which the invitee possesses specialized knowledge or technical skill.

In *Wingett v. Teledyne Indus., Inc.,* a foundry owner hired an independent contractor to replace the ductwork used to collect dust and sand from machinery used in the foundry. 479 N.E.2d at 53. Plaintiff, an employee of the independent contractor was injured when a portion of the ductwork he was removing, and on which he was sitting, fell to the floor. *Id.* Plaintiff brought suit against the foundry owner on the theory that the owner was negligent in not providing him a safe place to work and in failing to warn him that the work site was dangerous. *Id.* at 53–54.

The Indiana Supreme Court upheld the grant of summary judgment by the trial court which found that the foundry owner had no knowledge, either actual or constructive, of any dangerous conditions. In upholding this decision the court reasoned that the evidence failed to show that the foundry owner had actual or constructive knowledge about the alleged dangerous condition of the ductwork that would have been superior to that of plaintiff. In the absence of any superior knowledge, the foundry owner owed plaintiff no duty to warn him about the ductwork. *Id.* at 55.

In *Grills,* a bottling company hired plaintiff, a self-employed machinery repairman, to repair a bottling machine that had been jamming. 201 A.2d at 186. While plaintiff was checking the machine, it unexpectedly started and plaintiff's fingers were caught in the machine. *Id.* at 187. Plaintiff claimed that the company was negligent because it knew or should have known that the machine was in a defective and dangerous condition, and that it failed to warn plaintiff about the condition. *Id.*

The Connecticut Supreme Court agreed that the machine was defective in its operation. As the court stated: "Had it not been, the services of the plaintiff would not have been employed to remedy the defect." *Id.* But the court went on to find "nothing in the evidence from which the jury could find that

the company knew that the defect created a dangerous condition about which the company had to warn the plaintiff." *Id.* As a result, the court upheld the trial court's finding that plaintiff failed to prove that any duty the company owed to him had been violated. *Id.*

■ In this case, plaintiff was called in to work on the machine specifically because the machine had been malfunctioning. There is no evidence that defendant contracted with plaintiff's employer to repair only a portion of the machine or to examine only a specific aspect of its operation. Rather, the evidence shows that plaintiff undertook to completely rebuild the machine in order to bring the machine into good working condition. He worked on the machine for six consecutive days immediately before the day of the accident. Under these circumstances, it is impossible to conceive that defendant's knowledge of the machine was superior to that of plaintiff's.

Plaintiff has presented no evidence to show that defendant knew or should have known that the machine's safety device would fail on the day of the accident. There is no evidence that this specific problem had ever occurred before. Further, defendant was entitled to rely on Bobst which had three separate technicians examine and work on the unit in the weeks prior to the accident. As a part of each of these service calls, the standard procedure called for the technicians to check all safety devices on the unit prior to leaving the job.

Plaintiff contends that defendant was responsible for maintaining the machine in a safe operating condition and that modifications were not to be made to the unit's electrical system. Plaintiff has presented no direct evidence, however, to show any agreement between defendant and Bobst regarding defendant's responsibility in this area. To the contrary, it appears that defendant took the proper action to insure the machine's proper maintenance by hiring Bobst to service the machine when it was not operating appropriately.

Plaintiff also complains that he had not been told about an accident in which the machine operator's hand was pinched in the

Flexo. There is no evidence, however, to show that the earlier accident involving the Flexo, a separate machine, was in any way related to the accident which injured plaintiff. Even if there were some relationship between the two events, defendant informed plaintiff's employer about the Flexo incident. Bobst sent an electrician to work on the Flexo on July 1, 1991, specifically because of the accident. By requesting Bobst to service the machine, defendant fulfilled any duty to warn that it may have owed to plaintiff.

Finally, plaintiff argues that defendant was responsible for maintaining the machine's safety features and for checking the safety devices each time before starting the machine. As stated earlier, plaintiff has presented no evidence showing the extent of defendant's responsibilities in this area. Even if defendant was responsible for maintaining the safety devices, there is no evidence that the particular defect which caused plaintiff's injury could have been detected. Plaintiff, an expert technician, had worked on the machine for a full week prior to the accident and had detected no problems with the safety devices. During that time plaintiff used the safety gate and it functioned properly.

None of the evidence shows that defendant knew or should have known that the safety device would malfunction and injure plaintiff. Even if defendant had been aware of some problem with the machine, it acted properly by relying on plaintiff and plaintiff's employer for their technical expertise regarding the machine's operation. Under these circumstances, the court finds that plaintiff has failed to prove that any duty owed to him by defendant was violated.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 28) is granted. This case is dismissed.

**IT IS SO ORDERED.**