**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 28 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROGER KING,

      Plaintiff - Appellant,

v.

G & W FOOD, INC., aka G. W. Food, Inc.,

      Defendant - Appellee.

No. 02-3159
(D.C. No. 00-CV-1072-WEB)
(D. Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR**, **PORFILIO** and **KELLY,** Circuit Judges.

---

Plaintiff Roger King appeals the denial of his motion for a new trial under FED. R. CIV. P. 59. He asserts as error the district court's failure to rule as a matter of law that he was not an independent contractor, an erroneous jury instruction, and refusal of a requested jury instruction. We affirm.

This is a torts case revolving around the issues of negligence and premises

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

liability. Mr. King originally filed this action in Kansas state court, but defendant G&W Foods removed the case to federal court. The substantive law of the state of Kansas is applicable.

Early the morning of August 6, 1999, Namon Hawthorn, manager of a G&W Foods retail grocery outlet in Cherryvale, Kansas, discovered hydraulic oil on the floor near the compressor in the back of the building. Finding the hydraulic lift to be inoperable, he telephoned his supervisor in Chanute, who told him to call a repair service in Kansas City. Mr. Hawthorn learned the repair service would cost $1,000, so he took some time to decide what to do.

Meanwhile, a problem in the store's meat market required Mr. Hawthorn's immediate attention. He needed to fill an order for 300 pounds of hamburger meat, but the grinder was broken and the manufacturer said he could not fix it until late in the afternoon. Another G&W employee, Harry Cunningham suggested a quicker solution. He had an old friend in town, Roger King, who he claimed could fix anything. Mr. Cunningham knew Mr. King was not in the business of repairing machinery, but believed he might be able to do the job, and told Mr. Hawthorn that Mr. King was in the habit of doing such favors for friends in need. Mr. King was a farmer, raising crops and cattle on 4000 acres. His welding and machine experience was all agricultural. Prior to the events giving rise to this lawsuit, he had primarily welded farm implements. Mr. Hawthorn told

Mr. Cunningham to go ahead and call Mr. King to come over to the store.

Mr. King came to the store and repaired the meat grinder without incident. There was no discussion regarding compensation. It is undisputed that Mr. King had no expectation of compensation and did not consider himself as having been hired to repair the meat grinder. As Mr. King was leaving the store, Mr. Cunningham asked him to look at the hydraulic lift. Mr. Cunningham said it was urgent as a truck would arrive later that day and the hydraulic lift is required to unload the truck. In fact, the next delivery was not due until three days later.

Mr. Cunningham described the problems they had been having with the hydraulic lift leaking oil. Mr. King inspected the lift and said he would see what he could do. Again there was no discussion regarding compensation. Mr. King did not expect to be compensated, but instead regarded his work as a favor for a friend. There was no agreement between the parties obligating Mr. King to perform the work, to provide equipment for the task, or to produce any particular result. Mr. Cunningham sought Mr. Hawthorn's approval for Mr. King to commence the attempt at repairing the lift, which Mr. Hawthorn gave in order to save the $1,000 he would have to pay the Kansas City repair company.

The hydraulic lift was old and rusty, weighed 2900 pounds and sat in an 8 inch pit. The base of the lift was smaller than the pit by four inches on all sides. The manufacturer specifications required the base frame to be anchored, but it

was not anchored and could be moved quite easily with a 2x4. Mr. Hawthorn and Mr. Cunningham knew the base was not anchored, but neither mentioned this to Mr. King. Warning labels on the sides of the lift platform cautioned against going underneath the lift, but were obscured by grease and debris. Mr. Cunningham and Mr. Hawthorn were unaware of the warning labels. The lift could extend about sixty inches above the ground and was equipped with a safety maintenance bar. When the lift was raised, the safety bar could be inserted and once locked in place, someone could work safely below the lift. Mr. King did not see the safety bar, nor was he able to tell whether the base was anchored.

In performing the work on the lift, Mr. King used his own equipment and engaged the services of his teenage nephew (an employee of G&W who was not working in the store that day). Mr. King devised a way to pick up the lift and suspend it so he could go underneath to replace the hydraulic hose. He initially used two log chains in an attempt to lift the platform with his tractor, but the welds on the hand rail from which he suspended the chains began to fail. He reinforced the welds himself and also welded a metal strap to the platform before attempting to lift the platform with his front loader. Thus he succeeded in raising the platform two or three feet into the air. After lifting one side a bit higher so that he could get underneath the platform, he propped up two opposite sides of the platform using 4x4s and railroad ties. While underneath the platform he

discovered the hole in the hydraulic hose. He asked Mr. Hawthorn whether he preferred the hose to be spliced or replaced. Mr. Hawthorn opted for replacement and Mr. King obtained a replacement hose and installed it. Then, while attaching a metal clamp to keep the hose in place, the lift collapsed on him, causing him severe injuries.

The jury apportioned eighty-five percent of the liability in this case to Mr. King and fifteen percent to G&W foods. In Kansas, damages are only recoverable where the plaintiff's portion of the liability is less than fifty percent. Mr. King now appeals the district court's denial of his motion for a new trial.

The first point of error Mr. King alleges relates to the issue of whether he was an independent contractor and whether that determination is one of fact or of law. The court referred the question to the jury as one of fact. Mr. King maintains the court should have held as a matter of law that he was not an independent contractor. As the district court stated, however, at trial "defendant produced evidence that could support a finding of independent contractor status and requested that the jury be instructed on that issue." Aplt. Appx. at 222. The question of independent contractor status in this case thus involved issues of fact for the jury to resolve. Mr. King contends he could not have been an independent contractor because he provided his services as a favor, because he had no contractual intent, because he did not have full control over the work performed,

and because there was no agreement concerning compensation for the work. All of the issues Mr. King raises on this point involved fact disputes. Moreover, to the extent Mr. King argues that compensation is required for independent contractor status, he is incorrect. The Restatement (Second) of Torts § 409 states that compensation is irrelevant to the determination of status. RESTATEMENT (SECOND) OF TORTS § 409 cmt. a (1965) ("It is immaterial whether the work is done gratuitously or is done for pay."). Kansas cases contemporary with the first Restatement adopt similar language from the commentary to § 403:

> The words "independent contractor" denote any person to whom the construction, rebuilding or repairing of a chattel is entrusted in such a way as to give him charge and control of the details of doing the work, irrespective of whether the work is done gratuitously or is to be paid for by his employer or is in any other way of financial or other benefit to the contractor.

*Mendel v. Fort Scott Hydraulic Cement Co.*, 78 P.2d 868, 871 (Kan. 1938) (quoting *Bittle v. Shell Petroleum Corp.*, 75 P.2d 829, 832 (Kan. 1938) (quoting RESTATEMENT OF TORTS § 403 cmt.)). *Mendel* did not deal with the precise question at issue here, but it quoted the entire text above without reservation, implying its approval. We are not persuaded the district court erred in relying on the jury to resolve the issues of fact pertinent to determining independent contractor status.

Mr. King alleges a second point of error regarding the definition of "independent contractor" as contained in one of the jury instructions. He

maintains that Instruction No. 21 was "erroneous, inconsistent with Kansas law, emphasized selective aspects of the evidence, and failed to provide the jury with an ample understanding of the issues and applicable standards." Aplt. Br. at 1.

Instruction No. 21 states in pertinent part:

> An independent contractor is one who agrees to perform a service for another, with or without compensation, but who is neither under the control of the other nor subject to the other's right to control with respect to the physical conduct of the undertaking. An independent contractor has the right to direct the manner in which the work is to be performed. Factors tending to show independent contractor status include the use of some special skill that is performed without supervision from the one for whom the job is performed, the use of the contractor's own tools, performance of a service for a short period of time, and performance of a service that is not part of the regular business of the one for whom the service is performed.
>
> A business operator does not owe the same duties to an independent contractor that it owes to other business visitors. If you find that plaintiff was an independent contractor, then the defendant was under no duty to protect the plaintiff from the ordinary risks arising from or inherent in the repair that he agreed to perform. (This rule is an exception to the business operator's general duties to a business visitor, because one who acts as an independent contractor has the right to determine the manner of performing the agreed upon service, and is therefore responsible for determining how to do it safely.) An independent contractor assumes the ordinary risks inherent in the service he agrees to perform.
>
> At the same time, a business operator does have a duty to warn an independent contractor of any hidden dangers of which the business operator knows or should know relating to the appliance to be repaired, and which the independent contractor is unlikely to discover in the exercise of reasonable care.

Aplt. Appx. at 176-77.

The factors listed in the first paragraph quoted above are well-supported by

Kansas law. *See*, *e.g.*, *McCubbin v. Walker*, 886 P.2d 790, 794-95 (Kan. 1994); *Falls v. Scott*, 815 P.2d 1104, 1112 (Kan. 1991); *Brillhart v. Scheier*, 758 P.2d 219, 223-24 (Kan. 1988); *Knorp v. Albert*, 28 P.3d 1024, 1028 (Kan. Ct. App. 2001). The next paragraph of the instruction appears to draw a distinction between the duties owed to a business visitor and an independent contractor. As acknowledged in the text of the instruction, however, an independent contractor is in fact a business visitor. At least two Kansas cases support this view that there is more than one kind of business visitor. *See Aspelin v. Mounkes*, 476 P.2d 620, 623 (Kan. 1970); *Bessett v. Ernsting*, 127 P.2d 438, 440 (Kan. 1942).

Kansas has revised its approach to this question since *Aspelin* and *Bessett* were decided. In *Jones v. Hansen*, 867 P.2d 303 (Kan. 1994), the Kansas Supreme Court rendered these cases largely irrelevant by simplifying the duty of care standards for occupiers of land. Under *Jones*, the duty owed by an occupier of land became the same for all invitees and licensees: a duty of reasonable care under all the circumstances. *Id.* at 310. Thus, the distinctions drawn in the jury instruction are superfluous. Although this means the instruction is not the most accurate statement of the law, any error is harmless. While the instruction defined unnecessarily carefully the steps the jury would have to take in an analysis of "reasonable care under all the circumstances," the end result is the same. The instruction as given did not contemplate a different standard than the

one mandated in *Jones*.

The third point on which Mr. King alleges error involves the district court's refusal of one of his proposed jury instructions. Plaintiff's Proposed Instruction No. 11 involved special duties of possessors of land to invitees, as set forth in Restatement (Second) of Torts §§ 341A, 343.[1] As discussed above, the Kansas Supreme Court has abolished the common law principles codified in these two Restatement sections and replaced them with the simplified standard of "reasonable care under all the circumstances" for all invitees and licensees. *See id.* at 310. The *Jones* opinion states:

> We hold that in Kansas, the duty owed by an occupier of land to licensees shall no longer be dependent upon the status of the entrant on the land; the common-law classification and duty arising from the classification of licensees shall no longer be applied. The duty owed by an occupier of land to invitees and licensees alike is one of

---

[1]Section 341A states:
A possessor of land is subject to liability to his invitees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only if, he should expect that they will discover or realize the danger, or will fail to protect themselves against it.
RESTATEMENT (SECOND) OF TORTS § 341A (1965). Section 343 reads:
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.
RESTATEMENT (SECOND) OF TORTS § 343 (1965).

reasonable care under all the circumstances.

*id.* at 310.  The district court was therefore correct in refusing this proposed instruction.

Accordingly, we **AFFIRM**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge