Lon A. WINGETT, Appellant,

v.

TELEDYNE INDUSTRIES, INC., Donald F. Severs and F.D. Ramsey and Company, Inc., Appellees.

No. 685S240.

Supreme Court of Indiana.

June 19, 1985.

Edward A. Chapleau, David C. Chapleau, South Bend, for appellant.

Leon R. Kaminski, Mark A. Lienhoop, Newby, Lewis, Kaminski & Jones, LaPorte, for Donald F. Severs and F.D. Ramsey and Co., Inc.

Jon. F. Schmoll, Robin D. Pierce, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for Teledyne Industries, Inc.

GIVAN, Chief Justice.

This cause comes before the Court on appellees' Petitions for Transfer. Appellant filed suit against appellees for damages based on injuries he suffered while removing ductwork in a foundry. The trial court granted summary judgment in favor of appellees. The Court of Appeals, in an unpublished memorandum decision, reversed the trial court and remanded for a trial on the merits. *Wingett v. Teledyne Industries, Inc.* (1984), Ind.App., 466 N.E.2d 497. We grant appellees' petitions and thereby vacate the opinion of the Court of Appeals.

Appellant was injured while engaged in the removal of ductwork from the Teledyne Castings Plant in LaPorte, Indiana. The ductwork was manufactured by appellee F.D. Ramsey and Company, Inc. (Ramsey) and installed in 1975 by Ramsey and appellee Donald F. Severs (Severs). Its function was to collect dust and sand from machinery used in the foundry owned by appellee Teledyne Industries, Inc. (Teledyne).

In 1980 Teledyne hired an independent contractor, Tonn and Blank Construction Company (Tonn and Blank), to remove and demolish the existing ductwork and install a new sand reclamation system. Appellant, a journeyman ironworker, was hired by Tonn and Blank to be a member of the demolition crew. Tonn and Blank was in complete control of the work site as Teledyne closed the foundry during the removal process.

The existing ductwork, approximately thirty inches in diameter, was made of one-half inch gauge steel. Manufactured in segments, it was connected at the end of each segment by an iron collar through which bolts were inserted. The ductwork, which hung twenty-five to thirty feet above the floor, was supported by aluminum hangers attached to the foundry ceiling and located at six to eight-foot intervals.

The removal procedure employed by appellant, under the supervision of Tonn and Blank, was to proceed out onto the ductwork, wrap a cable around it, and attach the cable to a crane. While sitting on the ductwork, appellant would cut the aluminum hangers with an acetylene torch. Affidavits submitted by appellant and two co-workers alleged that the crane supported the ductwork.

On June 30, 1980, appellant was engaged in this procedure. He crawled out onto a section of ductwork, and while sitting on it, proceeded to cut the aluminum hangers. Upon cutting the second of two hangers supporting the segment on which he was sitting, the segment of ductwork and appellant fell to the floor. Appellant's co-workers who inspected the fallen segment observed that it had been connected by a one-eighth inch sheet metal band, sheet metal screws and two clamps rather than an iron collar.

Appellant contends that this allegedly defective connection was the proximate cause of his injuries. He filed suit alleging that Teledyne was negligent in failing to provide him with a safe place to work and in

failing to warn him that the work site was dangerous and unsafe. He then amended his complaint to include Ramsey and Severs, based on a theory of strict liability in tort.

After discovery was conducted, appellees moved for summary judgment, which was granted by the trial court. The court found as to Ramsey and Severs, that the ductwork had performed its intended purpose reasonably well and that Ramsey and Severs could not have reasonably foreseen that the ductwork would be used to support a man removing the hangers. As to Teledyne, the court found it had no knowledge of any dangerous conditions and could not with any reasonable degree of care have learned of such conditions. As to appellant, the court found he was contributorily negligent as a matter of law.

A divided Third District of the Court of Appeals determined summary judgment to be inappropriate and remanded for a trial on the merits. The majority found that the affidavits, as well as appellant's statement that the removal method was the standard procedure used in the trade, raise a genuine issue of material fact regarding the reasonable use of the ductwork by appellant and the foreseeability by the manufacturer that the ductwork would be removed using this procedure. The court further found that based on appellant's allegation that this was the standard procedure in the trade for duct removal, a question of fact exists whether the ductwork was a dangerous instrumentality and whether Teledyne, using ordinary care, should have known of the danger and warned appellant.

As stated by Judge Hoffman in his dissent, this case involves purely legal questions properly resolved by the trial judge.

■ A motion for summary judgment shall be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind.R.Tr.P. 56(C); *Bell v. Northside Finance Corp.* (1983), Ind., 452 N.E.2d 951. The movant has the burden of proving the nonexistence of a genuine issue of material fact, and the motion should be resolved in favor of the party opposing it if there is any doubt as to the existence of a material factual issue. *Bell, supra; Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59. Nevertheless, the non-moving party must come forward with probative evidence to controvert a showing by the movant that no triable issue of fact exists for adjudication. Ind.R.Tr.P. 56(E); *Raymundo v. Hammond Clinic Assoc.* (1983), Ind., 449 N.E.2d 276. Appellant, the non-moving party, has not presented such evidence relative to either of his claims.

■ Appellant's negligence claim against Teledyne was premised on the common law duty owed by landowners to business invitees. The question of whether a common law duty exists is a matter of law. *Hurst v. Board of Commissioners of Pulaski County* (1985), Ind., 476 N.E.2d 832; *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701. The court must determine whether the law recognizes any obligation on the part of a defendant to conform his conduct to a certain standard for the benefit of the plaintiff. *Miller, supra; Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280 (duty arises as matter of law out of relation existing between the parties).

■ Generally, a landowner has a common law duty to exercise care to keep his property in a reasonably safe condition for business invitees, including employees of independent contractors. *Plan-Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212; *see Louisville Cement Co. v. Mumaw* (1983), Ind.App., 448 N.E.2d 1219 (employees of independent contractor are business invitees). "The basis of liability of the inviter for failing to render the premises reasonably safe for the invitee *must be predicated upon the superior knowledge of the inviter of the dangers of the premises."* *Hoosier Cardinal Corp. v. Brizius* (1964), 136 Ind.App. 363, 377, 199 N.E.2d 481, 487–88, *trans. denied* (emphasis added); *see Curl v. Bethlehem Steel Corp* (1979), 181 Ind.App. 132, 390 N.E.2d 709.

■ Appellant contends Teledyne must be imputed to have had superior knowledge. He argues the ductwork had been in the foundry for five years and when installed was not covered by the layer of dust and soot which he contends caused the alleged defect to be hidden. The crux of his argument is that Teledyne, in exercising reasonable care, should have discovered the allegedly defective connection and, reasonably foreseeing appellant would be employing the removal method used, should have warned him that the ductwork was a dangerous instrumentality.

Yet appellant has not presented evidence to show Teledyne had the superior knowledge of the allegedly dangerous condition of the ductwork upon which its liability must be predicated. *Curl, supra; Hoosier Cardinal, supra.* Teledyne did not specify, by contract or otherwise, the method of removal to be employed by Tonn and Blank. No Teledyne employees were present in the foundry while the demolition crew was working. Tonn and Blank was in complete control of the ductwork at that time. Appellant's activities were directly supervised by Tonn and Blank who was, along with appellant, in a position to discover any irregular connections.

There is nothing to indicate Teledyne had ever inspected the ductwork, which apparently had performed without malfunction. There is no evidence indicating the ductwork was intended for any purpose other than the collection of dust and sand from machinery used in the foundry. Nor is there any evidence to indicate the ductwork was in a dangerous or unsafe condition when used for its intended purpose. *See Hoosier Cardinal, supra* 136 Ind.App. at 377, 199 N.E.2d at 485.

Consequently we cannot agree with appellant's contention that Teledyne was legally obligated to inspect the connections, either when the ductwork was installed or prior to Tonn and Blank entering the foundry, to determine if the ductwork was capable of sustaining the weight of a man cutting the support hangers in the process of dismantling the ductwork. We find no

evidence to indicate Teledyne had actual or constructive knowledge of any danger superior to that of appellant. Under the circumstances presented here, Teledyne owed no duty to appellant to warn him of the nature of the connection.

Appellant's claim against Ramsey and Severs was premised on a theory of strict liability in tort. He contends Ramsey and Severs manufactured and installed a product with a dangerously hidden defect and failed to warn him of the danger presented by his reasonably foreseeable use of the product.

■ In a products liability case, recovery for a plaintiff requires proof that the product defect was the proximate cause of his injury. *Hoffman v. E.W. Bliss* (1983), Ind., 448 N.E.2d 277; *Conder v. Hull Lift Truck, Inc.* (1982), Ind., 435 N.E.2d 10. Liability will be attributed to the manufacturer only if the product contains a defective condition rendering it unreasonably dangerous for its intended use. *Hoffman, supra; Conder, supra.* The applicable statute addressing liability in tort reads in part:

"(a) One who sells any product in a defective condition unreasonably dangerous to any user or consumer or to his property is subject to liability for physical harm thereby caused to the user or consumer or to his property if that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition, and, if:

"(1) the seller is engaged in the business of selling such a product, and

"(2) the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." Ind.Code § 33–1–1.5–3 (West 1983).

■ We cannot agree with appellant's apparent contention that a person who dismantles or demolishes a product be deemed a "user" or "consumer" within the meaning of the statute. Ind.Code § 33–1–1.5–3(a). Further, there is no authority to

support his corollary contention that dismantling or demolishing a product be recognized as an intended use of the product within the scope of products liability law. We hold that a manufacturer's potential liability for products placed in the stream of commerce does not extend to the demolition of the product.

As stated *infra,* the Court of Appeals found the existence of a material factual issue regarding the ductwork's reasonable use by appellant and the foreseeability by the manufacturer that the ductwork would be removed by the procedure used by appellant. It is uncontroverted that the ductwork was manufactured and installed solely for the purpose of collecting sand and dust from machinery used in the foundry. There is nothing to indicate any risk inherent in the intended use of the ductwork.

While the question of foreseeability is generally one of fact for the jury, we hold that appellant's "use" of the ductwork was not reasonably foreseeable as a matter of law, notwithstanding appellant's allegation that he was employing the standard trade procedure for duct removal. Because the dismantling and demolition of the ductwork was not a reasonably foreseeable use of the product, Ramsey and Severs owed no duty to appellant to warn of any risks related to his work as part of the demolition crew. A manufacturer need only warn of reasonably foreseeable dangers. *See* Restatement (Second) of Torts § 402A comment j (1965).

Summary judgment will be affirmed if sustainable on any theory or basis found in the record. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154; *Coca-Cola Bottling Co.—Goshen v. Vendo Co.* (1983), Ind.App., 455 N.E.2d 370. As Teledyne owed no duty to appellant as a matter of law, there is no triable issue in regard to appellant's negligence claim. Summary judgment in favor of Ramsey and Severs was also appropriate, as the ductwork was not the proximate cause of appellant's injury.

We grant appellees' Petitions for Transfer and thereby vacate the opinion of the Court of Appeals. The trial court is in all things affirmed.

PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with separate opinion.

HUNTER, J., not participating.

DeBRULER, Justice, dissenting.

There is support within the affidavits and statements made in opposition to summary judgment, that there is a legal duty owed by those who designed and constructed this ductwork to those who would ultimately dismantle and remove it. Representations in these documents support the proposition that there is a standard method in the trade for removing ductwork of this type. If this is so, then the designer and constructor of it have a legal duty to factor the employment of that method of removal into its design and construction. A duty of like nature is owed by the manufacturer of fluorescent lightbulbs and aerosol cans and the like, to provide warnings which instruct on how to safely discard such items when the end of their useful lives is reached. Here, the joinder of the duct by a flush, sheet metal band at one point, rather than by the rigid flange and bolt method used at other points, could reasonably be viewed as inconsistent with the safe employment of the standard removal procedure, and hence provide a rational basis for liability. I agree with the Third District majority, that summary judgment was not appropriate in this case.