**James R. BOGARD, Mary Lou Bogard, Appellants (Plaintiffs Below),**

v.

**MAC'S RESTAURANT, INC., Appellee (Defendant Below).**

No. 54A01–8805–CV–160.

Court of Appeals of Indiana, First District.

Nov. 30, 1988.

Rehearing Denied Jan. 4, 1989.

George G. Ponton, Frankfort, Lawrence McTurnan, McTurnan Meyer & Cadwell, Indianapolis, for appellants.

Cory Brundage and Bette J. Dodd, Ice, Miller, Donadio & Ryan, Indianapolis, James E. Ayres, Crawfordsville, for appellee.

ROBERTSON, Judge.

James R. and Mary Lou Bogard appeal a grant of summary judgment in favor of Mac's Restaurant, Inc. (Mac's).

We affirm.

James Bogard (Bogard) sustained a shattered hip when he fell from a ladder he had positioned against the Mac's Restaurant building in Frankfort, Indiana. Bogard worked for Crum Construction in general maintenance and had been sent by Crum in response to a call by Mac's to repair a furnace/air conditioning unit located on the roof of the restaurant. Bogard brought this action against Mac's alleging Mac's furnished him with the ladder he used to ascend to the roof, knowing that the ladder was rotten and unreasonably dangerous. He alleged Mac's negligence in failing to warn him of the ladder's dangerous condition, failing to provide him with a safe place to work, or failing to furnish him with a safe ladder was the proximate cause of his injuries.

As the trial court noted, the primary issue involved in the case at this stage of the proceedings is one of duty. Bogard derives his argument that Mac's owed him the duty to use reasonable care from three sources: the common law duty a landowner owes invitees who come upon his property; certain nondelegable common law duties owed by an employer of an independent contractor to the contractor's employees; and, the duty owed by the supplier of chattels to third persons, annuciated in the Restatement (Second) of Torts § 388, § 392 (1965). We agree with the trial court that, based upon the uncontradicted facts elicited through discovery, Mac's has shown it owed Bogard no duty arising from any of the relationships argued by Bogard, and it is entitled to summary judgment as a matter of law.[1]

A motion for summary judgment shall be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56(C). The movant bears the burden of proving the nonexistence of a genuine issue of material fact. If there is any doubt as to the existence of a material factual issue, the motion should be resolved in favor of the party opposing the motion. Nevertheless, the non-moving party must come forward with probative evidence to controvert a showing by the movant that no triable issue of fact exists for adjudication. T.R. 56(E); *Wingett v. Teledyne Industries, Inc.* (1985), Ind., 479 N.E.2d 51, 54.

The parties agree that Bogard was an invitee as that term has been defined by Indiana law. Generally, a landowner has a common law duty to exercise care to keep his property in a reasonably safe condition for his invitees, including employees of independent contractors. *Wingett, id.* at 54. This duty involves warning an invitee of latent or concealed defects in the property not likely to be discovered by an invitee. *Louisville Cement Co. v. Mumaw* (1983), Ind.App., 448 N.E.2d 1219, 1221; *Wingett, supra.* The

---

1. In their briefs, the parties focus their arguments on the question of the ladder's ownership, and consequently, the utility, for summary judgment purposes, of a statement given by another Crum employee to Bogard's attorney. Since the factual question of ownership is not one of the issues dispositive of the litigation, we need not consider further the statement's admissibility or its usefulness as a means of creating a genuine issue of material fact. *But, cf. Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), Ind., 446 N.E.2d 1310, 1314.

basis of the landowner's liability for failing to render the premises reasonably safe for the invitee is the landowner's superior knowledge of the dangers on the premises. *Wingett, supra.*

■ The trial court found "no showing ... that anyone on behalf of the defendant had ... knowledge superior to the plaintiff," and neither do we. The facts adduced through discovery showed that the ladder used by Bogard the day of his fall had been stored at the restaurant on a more or less permanent basis. While a dispute exists over to whom the ladder belonged, the witnesses all agree that this particular ladder had been at the restaurant for a considerable period of time. The evidence showed that Crum employees used the ladder frequently for maintenance chores at the restaurant because it was simply more convenient to use than the ladders stored on and in Crum's trucks. Bogard himself used the ladder on a regular basis, as often as twice a week, had used that ladder at least twenty times, and knew the ladder's condition; it "was the ladder they used all the time." Mac's employees also used the ladders stored at the various Mac's locations to change filters in the roof-top air conditioning units. Crum employee Wills testified in his deposition that the ladder in question was too short and that the Mac's manager at the Frankfort location complained about it being too short in front of him on one occasion. (R. 480). The evidence also showed that if repair work needed to be done on the ladders at the restaurants, Crum's employees did the work, and that ladders were often nailed together on the spot by Crum employees.

There is no evidence to indicate that anyone at Mac's had actual or constructive knowledge of the rotten condition alleged by Bogard to be the latent peril proximately causing his injury. To the contrary, the evidence is uncontradicted that Crum employees did the repair and maintenance work at the restaurants and on the ladders stored at the restaurants, and that Bogard in particular worked most frequently at the Frankfort restaurant because he lived in the area. There is no showing when the ladder had last been used or observed by an employee of Mac's, and no evidence indicating that employees or agents of Mac's had ever inspected the ladder in question or had reason to discover the ladder's rotted condition. Bogard's fall occurred in mid-December, 1982. Inasmuch as Crum Construction employees had complete control over the manner and means of performing the furnace/air conditioning repair, were the primary users of the ladder, and were ultimately responsible for the ladder's maintenance, we must agree with the trial court that Bogard has not demonstrated a genuine issue of fact on the existence of Mac's knowledge, superior or otherwise of the alleged latent defect. Therefore, Mac's had no duty to warn Bogard of the ladder's allegedly defective condition.[2] *See, Wingett, supra.*

■ Bogard also apparently predicates his theory of duty upon certain exceptions to the general rule that an owner of property is not liable for the torts of the one he hires to perform work as an independent contractor. *See, e.g. Cummings v. Hoosier Marine Properties, Inc.* (1977), 173 Ind.App. 372, 363 N.E.2d 1266, 1277, *trans. denied; Hale v. Peabody Coal Co.* (1976), 168 Ind.App. 336, 343 N.E.2d 316. Bogard maintains Mac's had a nondelegable duty, even though Crum was an independent contractor, because (1) the contract between Mac's and Crum required the use of an intrinsically dangerous instrumentality, (2) Mac's was charged by law or contract with a specific duty, and (3) the act required to be performed by Crum would probably cause injury to others unless due precaution was taken to avoid harm.

With respect to the first exception relied upon by Bogard, the evidence showed only that Crum had an oral agreement with Mac's to provide general maintenance services. There is no evidence that the agreement required the use of a ladder, but, assuming it did, a step ladder has been held not to be inherently dangerous or a "dan-

---

2. Whether the ladder was in fact defective as Bogard alleges is a matter in dispute.

gerous instrumentality" *per se. Neal, Adm'r. v. Home Builders, Inc.* (1953), 232 Ind. 160, 174, 111 N.E.2d 280. Furthermore, as Mac's points out, this court has held on two occasions that the "inherently dangerous work" exception to the general rule of nonliability does not extend to employees of the independent contractor performing the work. *Johns v. New York Blower Co.* (1982), Ind.App., 442 N.E.2d 382, 388 and *Texas Eastern Transmission Corp. v. Seymour National Bank* (1983), Ind.App., 451 N.E.2d 698, 699, *trans. denied.* Similarly, to the extent Bogard is claiming a nondelegable duty because the act to be performed would likely cause injury to others, the language "injury to others" has been held to mean injury to third persons who are not involved in the work being done and less likely to be aware of the associated dangers. *See, e.g. Hale v. Peabody Coal Co., supra,* 343 N.E.2d at 324; *Mumaw,* 448 N.E.2d at 1222. Finally, Bogard does not argue Mac's has been charged with a specific duty by virtue of its contract with Crum, but argues only a duty by reason of the common law. We have already concluded Mac's had no duty as an owner or occupier of property arising from the common law.

■ Bogard's last basis of liability emanates from the relationship between a supplier of chattels and third persons who use the furnished chattel. Two sections of the Restatement (Second) of Torts address this issue. Bogard cites § 392 which deals with the supplying of chattels for the supplier's business purpose.[3] That section provides:

One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied or,

(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

One significant difference between this section and § 388 is the imposition of a duty on the supplier to make a proper inspection of the chattel which would disclose the existence of a defect. Such a duty is imposed on the supplier because the chattel is to be used for the supplier's business purpose. *See, e.g.* Restatement § 388 comment m, f, § 392 comment a. Restatement § 392 comment e makes clear that the affirmative duty to inspect stems from the supplier's promise to furnish the necessary tools in furtherance of its business purpose; where use of the chattel is permissive, the chattel is supplied gratuitously and not in furtherance of the supplier's business purpose. Indiana case law appears to be consistent with these principles. *See, e.g., Mitchell v. Smith* (1965), 138 Ind.App. 93, 211 N.E.2d 809. *Cf., also, Hilleary v. Bromley* (1946), 146 Ohio St. 212, 64 N.E.2d 832, cited by Bogard.

Hence, in order to avoid summary judgment, Bogard must show Mac's supplied the ladder to be used for its business purposes. We find no evidence Mac's agreed to supply Crum with the tools necessary to maintain the premises. Consequently, while the evidence suggests Mac's permitted Crum employees to use the ladder while it was within Mac's possession and control, it had no duty to discover any defects in the ladder and render it safe or inform those expected to use it.

Bogard does not argue the applicability of § 388 of the Restatement which addresses the supplying of a chattel known to be dangerous for its intended use. We note,

---

**3.** Mac's arguably is a supplier for purposes of § 388 and 392. "Supplier" includes

any person who for any purpose or in any manner gives possession of a chattel for another's use, or who permits another to use or occupy it while it is in his own possession or control, without disclosing his knowledge that the chattel is dangerous for the use for which it is supplied or for which it is permitted to be used.

Restatement (Second) of Torts § 388 comment c. (1965).

however, that since there is no showing Mac's knew or had reason to know the ladder was dangerous for its intended use, Bogard cannot prevail by virtue of § 388 either.[4]

This court having determined that Mac's had no obligation to exercise due care for the safety of Bogard, the employee of an independent contractor, the entry of summary judgment in favor of Mac's is affirmed.

JUDGMENT AFFIRMED.

NEAL and HOFFMAN, JJ., concur.

**4.** Restatement § 388 provides:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.