Robert McGLOTHLIN, Appellant–
Plaintiff,

v.

M & U TRUCKING, INC., Transamerica
Leasing, Inc. and Southern Pacific
Transportation Company, Appellees–De-
fendants.

No. 53A05–9405–CV–189.

Court of Appeals of Indiana,
Fifth District.

April 19, 1995.

Rehearing Denied June 5, 1995.

Bruce A. MacTavish, Pardieck Gill & Vargo, Seymour, John H. Shean, Bloomington, for appellant.

Stephen R. Pennell, Brent W. Huber, Stuart & Branigin, Lafayette, Thomas J. Belcher, Kelley Belcher & Brown, Bloomington, for appellees.

## OPINION

SHARPNACK, Chief Judge.

Robert McGlothlin appeals the trial court's grant of summary judgment in favor of Transamerica Leasing, Inc. (Transamerica) and Southern Pacific Transportation Company (Southern Pacific) in McGlothlin's negligence action. We affirm.

McGlothlin presents one issue for our review, which we restate as whether the trial court erred in granting summary judgment in favor of Transamerica and Southern Pacific on the grounds that there existed no material issue of fact for resolution by the trial court.

When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court. We may only consider those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the moving party for purposes of the motion for summary judgment. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434; Ind.Trial Rule 56(C), (H). We may not reverse summary judgment orders on the ground that there is a genuine issue of material fact unless the material fact and relevant evidence were specifically designated to the trial court. *Id.* The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Id.* All properly asserted facts and reasonable inferences should be resolved against a moving party. *Indiana Board of Public Welfare v. Tioga Pines* (1993), Ind., 622 N.E.2d 935, 940.

On February 26, 1990, McGlothlin was employed at Thomson Consumer Electronics in Bloomington, Indiana, where he was loading televisions into a trailer that was parked at a loading dock at the rear of the factory. While McGlothlin was inside the trailer, the trailer's "landing gear" collapsed, causing the front end of the trailer to fall to the ground. McGlothlin suffered a serious injury to his shoulder as a result.

The trailer in which McGlothlin was injured, designated REAZ256578, was owned by Transamerica. Transamerica had entered into a "railroad membership agreement" with Southern Pacific, pursuant to which Transamerica trailers, including REAZ256578, were part of a national pool of highway trailers used to carry freight aboard railroad flatcars. Southern Pacific had entered into a "trailer interchange agreement" with M & U Trucking ("M & U"), under which Southern Pacific leased trailers to M & U, and M & U provided drivers and semi-tractors to transport freight via highway.

Southern Pacific took possession of the trailer on February 3, 1990 in East St. Louis, Illinois. The trailer was transported to Texas and Arkansas, then returned to East St. Louis, where M & U took possession of it on

February 20, 1990. From that date until February 26, 1990, when the accident occurred, the trailer was leased to M & U and remained in the possession, custody, and control of M & U or Thomson Electronics.

McGlothlin's original complaint in this action was filed on June 26, 1991. Following a hearing, summary judgment was granted in favor of Transamerica, Southern Pacific, and M & U on January 21, 1994. McGlothlin has not appealed the trial court's order in favor of M & U.[1]

We note initially summary judgment is inappropriate in most negligence actions. *Barsz v. Max Shapiro, Inc.* (1992), Ind.App., 600 N.E.2d 151, 152. Issues of negligence, contributory negligence, causation, and reasonable care are most appropriately left for a determination by the trier of fact. *Houin v. Burger by Burger* (1992), Ind.App., 590 N.E.2d 593, 596. Whether a duty of care exists, however, is a question of law for the court. *Id.*

To recover on a theory of negligence, the plaintiff must establish: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995.

The essence of McGlothlin's argument against the trial court's grant of summary judgment is that Transamerica and

Southern Pacific had a duty to inspect, maintain, and repair the trailer, and that they breached this duty when they failed to detect and remedy a latent defect in the landing gear that allegedly caused McGlothlin's injuries.

The threshold question before us, then, is whether Transamerica or Southern Pacific had a duty to exercise care to protect McGlothlin from injury. Before a defendant can be held liable for negligence, it must first be shown that the defendant owes a duty to the plaintiff; absent a duty, there can be no breach of a duty and no negligence or liability based upon breach of duty. *Wilson v. Haimbaugh* (1985), Ind.App., 482 N.E.2d 486, 487.

Generally, "[a] person undertaking to furnish machinery or appliances for the use of others ordinarily assumes a duty to furnish proper and safe appliances." 65 C.J.S. *Negligence* § 70. This is true "even where the person using the appliance, or his employer, does not receive the appliance directly from the person furnishing it, since the liability rests not on a contractual relation between the person injured and the person whose negligence caused the injury, but on the failure to perform a duty assumed by one, which results in injury to another."[2] *Id.*

McGlothlin asserts that Transamerica and Southern Pacific assumed a duty to provide preventive maintenance by their contract with each other, which provided for preventive maintenance, and by their conduct

---

1. M & U Trucking is also a defendant in a cross-claim filed by Transamerica and Southern Pacific. On September 22, 1993, the trial court entered summary judgment in favor of Transamerica and Southern Pacific on their cross-claim and ordered M & U to indemnify and defend them.

2. The duty of suppliers of chattels to third persons who use the chattel is discussed similarly in the Restatement (Second) of Torts § 392, which provides as follows:

"One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied or,

(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it."

Restatement (Second) of Torts, § 392 (quoted in *Bogard v. Mac's Restaurant, Inc.* (1988), Ind. App., 530 N.E.2d 776, 779). This section imposes a duty on the supplier to make a proper inspection of the chattel which would disclose the existence of a defect. *Bogard,* 530 N.E.2d at 779.

in adhering to a preventive maintenance program according to industry guidelines. McGlothlin is correct in that a duty of care may arise contractually or where a party assumes such a duty, either gratuitously or voluntarily. *Plan–Tec, Inc. v. Wiggins* (1983), Ind.App., 443 N.E.2d 1212, 1218–19. The only contract provision cited by McGlothlin, however, states that Transamerica is to bear the expense of and to perform preventive maintenance. The provision does not evince "an intent on the part of the parties to charge one party with a duty of care." *Id.* at 1218. Further, McGlothlin has directed us to no evidence to suggest that whatever duty of care was assumed by Transamerica and Southern Pacific through their maintenance programs or under industry standards was greater than their general duty to furnish an instrument intended for the use of another in a proper and safe condition.

As noted above, McGlothlin argues specifically that Transamerica and Southern Pacific breached their duty to inspect, maintain and repair the trailer because their procedures failed to detect and remedy a latent defect that caused McGlothlin's injuries. McGlothlin does not allege that the defect in the landing gear that caused the trailer's collapse was an obvious one, and it is undisputed that Transamerica and Southern Pacific performed the routine inspections that they were required to perform under their railroad membership agreement, under the Association of American Railroads' Interchange Rules, and under Federal Highway Administration requirements.

McGlothlin relies on the affidavits of his expert, Professor Donald L. Cole, to create an issue of fact. Cole's opinions are presented in three documents: an affidavit of November 17, 1992, a deposition of September 21, 1993, and a supplemental affidavit of November 17, 1993. As noted by the appellee, there are a number of inconsistencies between Cole's affidavits and his responses upon deposition, and we agree that as a general matter the opinions of Professor Cole are conclusory and speculative.[3] For the purposes of our discussion of this issue, however, we may extract from Cole's testimony and affidavits the allegation that the preventive maintenance, maintenance, hazard identification, and repair policies of Transamerica and Southern Pacific were inadequate to discover the latent defect that allegedly caused the collapse of the trailer, as discussed in the following colloquy:

"Q. Based upon your review of the facts of this case, were you able to reach any opinion as to whether or not the landing gear of this trailer collapsed due to damage or defect or the other potential causes that we have discussed here today?

A. Yes, after reviewing the materials I had available to me it was my opinion that it collapsed as a result of the presence of a latent defect.

Q. Specifically what part of the landing gear do you contend contained this latent defect?

A. I'm unable to say what part it was....

\* \* \* \* \* \*

Q. I believe earlier in your testimony, Professor, you indicated that there is a possibility that the landing gear may have been damaged in transit sometime after M & U took possession of this trailer; correct?

A. Yes, there's always that possibility.

Q. You also indicated there's the possibility that the landing gear may not have been properly set when the trailer was

---

**3.** Professor Cole, who teaches mechanical engineering, stated in his deposition that he had not examined the landing gear on the trailer, that he had never done any independent research on the subject of landing gear, that he had never been involved in the design, construction, or manufacture of landing gear, that he was not familiar with any articles or publications that he considered authoritative on landing gear, and that he was not familiar with any articles dealing with potential failure of landing gear. Professor Cole also admitted that he had no information as to what happened to the trailer during the period between the time M & U took possession of it and the time of the accident. Professor Cole's opinions were based on photographs of the trailer, depositions of McGlothlin and employees of Transamerica, Southern Pacific, and M & U, and company records.

located at Thomson Electronics; correct?

A. Yes, there's always that possibility.

Q. There's also the possibility that one of the landing gear may have been set in a depressed area or at a different elevation than the other landing gear; correct?

A. One of the feet, that is a possibility, yes.

Q. Given the fact that there are these other possibilities, Professor, wouldn't you agree that whether the landing gear collapsed or failed due to a defect as opposed to these other possibilities, at least at this point, would be a matter of speculation?

A. No, I don't think that it would be. Based upon the type of inspections that are conducted by Transamerica and Southern Pacific of the landing gear and of the trailer in general, I don't believe that there's any way they would detect a latent defect."

Record, pp. 1233–35. Thus, at best Professor Cole raises an issue of fact concerning whether there existed a latent defect in the landing gear. This issue of fact would only defeat the defendants' motion for summary judgment, however, if there exists as a matter of law a duty on the part of Transamerica and Southern Pacific to discover such latent defect.

No Indiana court had addressed directly the question of a supplier's liability for injury caused by a latent defect in a chattel furnished for the use of another. Transamerica and Southern Pacific direct us to two Indiana cases where the court of appeals, in different contexts, found no duty to discover latent defects. *Stump v. Indiana Equipment Co.* (1992), Ind.App., 601 N.E.2d 398, 407, *reh'g denied, trans. denied,* and *Czaja v. City of Butler* (1992), Ind.App., 604 N.E.2d 9.[4]

In *Stump,* an employee of an excavating company was injured when a wiring defect caused a grading machine to move unexpectedly. *Stump,* 601 N.E.2d at 400. One of the issues in the case was what duty was owed to the plaintiff by MacAllister, the dealer who sold the used grader to the excavating company. *Id.* at 406. The court analogized MacAllister's duty to that of a used car dealer, which owed its customers "a duty to inspect and discover *patent* defects in the used equipment" but which had no duty to discover " '*latent* defects which by their very nature could not be discovered by a reasonable and customary inspection.' " *Id.* (quoting *Masker v. Smith* (1981), Fla.Ct.App., 405 So.2d 432, 433–34).

In *Czaja,* a woman was injured when a tree located on a state right of way fell on top of her car during a storm. *Czaja,* 604 N.E.2d at 9. The evidence showed that while the tree was rotted to within four inches of its outside diameter, there were no outwardly visible signs of rot. *Id.* at 10. The court held that "while a city has a duty to keep its streets reasonably safe, the duty is only triggered when the city has actual or constructive knowledge of the dangerous or defective condition." *Id.*

While both of these cases are distinguishable on their facts, we agree with Transamerica and Southern Pacific that these decisions—along with several premises liability decisions finding no liability arising from latent defects of which the owner was unaware[5]—suggest that it would be inconsis-

---

4. Transamerica and Southern Pacific also direct us to *Bogard, supra,* but that case is distinguishable on grounds unrelated to the distinction between latent and obvious defects. In *Bogard,* an employee of a construction company was injured when he fell from a ladder supplied to him by the restaurant where he was performing the construction work. *Bogard,* 530 N.E.2d at 777. The court found that the ladder had not been supplied in furtherance of the restaurant's business purposes, but gratuitously, and thus the restaurant had no duty to discover any defects in the ladder. *Id.*

5. *See, e.g., Dickison v. Hargitt* (1993), Ind.App., 611 N.E.2d 691:

"This court has often repeated the exception that a landlord has a duty to warn the tenant of hidden defects known to the landlord but unknown to the tenant. [citations omitted] Because none of these cases squarely addressed the issue of the landlord's knowledge, it bears repeating that the hidden defect exception to the rule of *caveat lessee* requires *actual* knowledge of the hidden defect on the landlord's part before a duty to warn of the defect arises.... No duty to warn arises and no

tent with Indiana law and public policy to hold that Transamerica or Southern Pacific had a duty to discover latent defects in the trailer landing gear that would not have been revealed by a reasonable and customary inspection.

McGlothlin has pointed us to no evidence designated to the trial court to suggest that the inspections performed by Transamerica and Southern Pacific did not conform to industry custom and practice.[6] The evidence is to the contrary. As noted above, the trailer was inspected routinely under industry standards. The last inspection performed by Transamerica prior to the accident took place on January 31, 1990. While in Southern Pacific's possession, the trailer was inspected five times between February 3, 1990, and February 20, 1990, when it was transferred to M & U.

McGlothlin argues that summary judgment was inappropriate because there exists an issue of fact as to whether the inspections performed by Transamerica and Southern Pacific were inadequate because they failed to discover the existence of a latent defect in the landing gear. As Transamerica and Southern Pacific did not owe McGlothlin a duty to detect a latent defect in the landing gear, it follows that summary judgment was properly granted.

Affirmed.

FRIEDLANDER, J., concurs.

RUCKER, J., concurs in result.

---

liability accrues if the landlord is without actual knowledge of the latent defect."
*Id.* at 694–95 (emphasis in original).

6. Professor Cole stated that the latent defect that allegedly caused the trailer's collapse—and the nature of the defect remains unknown—*may* have been discovered through the use of a "magnaflux" test or a dye penetrant test. Professor Cole knew of no company, however, that used either of these tests to inspect trailer landing gear.