**Bob Allen BLOEMKER,**
**Appellant–Plaintiff,**

**v.**

**DETROIT DIESEL CORPORATION, PTI Industries, Incorporated, and North Manchester Foundry, Inc., Appellees–Defendants.**

No. 85A02–9408–CV–491.

Court of Appeals of Indiana.

Sept. 7, 1995.

Rehearing Denied Oct. 19, 1995.

Harry A. Wilson, Jr., John A. Payton, Wilson Kehoe & Winingham, Indianapolis, for appellant.

Michael L. James, Jeffrey A. Townsend, Baker & Daniels, Fort Wayne, for Detroit Diesel Corporation.

Michael K. Lulich, Lulich, Murphy & Dowling, Indianapolis, for North Manchester Foundry, Inc.

## OPINION

KIRSCH, Judge.

Bob Bloemker appeals the trial court's entry of summary judgment in favor of Detroit Diesel Corporation and North Manchester Foundry, Inc. on Bloemker's negligence claim. The issues raised are:

I. Whether Bloemker's claim is barred by the ten-year statute of repose contained in Indiana's Product Liability Act.

II. Whether Detroit Diesel and North Manchester owed Bloemker a common law duty to inspect the item which injured Bloemker and to warn him of any defects.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

Bloemker is an experienced journeyman pattern maker employed by Allen Pattern Works in Fort Wayne, Indiana. A pattern is a master model used to make a mold into which molten iron is poured to form a casting. On September 19, 1990, Bloemker was making two modifications to a particular pattern as directed by his employer. In order to make the modifications, Bloemker heated the pattern. During the heating process, the pattern exploded. Bloemker was injured, losing his right arm.

A post-explosion inspection revealed that the pattern had a sealed cavity that contained a mixture of sand and moisture. When Bloemker heated the pattern, the mixture expanded, resulting in the explosion. Core material such as sand and moisture is typically removed from pattern cavities. The pattern in question, however, contained only one vent hole which was inadequate to remove the core material. Patterns with cavities of the size involved here normally have more than one vent hole or access point.

Detroit Diesel owned the pattern that injured Bloemker. Prior to the incident involving Bloemker, the pattern was used to make cast iron thermostat housing covers for use on Detroit Diesel's Series 149 diesel engine. PTI Industries was the direct supplier of the thermostat housing covers to Detroit Diesel. When the need for the covers arose, Detroit Diesel would contact PTI Industries who would then contact North Manchester to make the covers. North Manchester would use the pattern to make the covers and then send the covers to PTI for finishing work. PTI would then deliver the completed housing covers to Detroit Diesel.

Although Detroit Diesel owned the pattern, North Manchester retained it to make the thermostat housing covers when requested. Prior to the explosion, PTI Industries contacted North Manchester requesting two modifications to the pattern. North Manchester contracted with Allen Pattern Works, Bloemker's employer, to perform the modifications. Detroit Diesel did not request the modifications and had no knowledge that the modifications were being sought or performed. None of the defendants inspected the pattern before it was delivered to Allen Pattern Works.

The identity of the pattern's original manufacturer is unknown. The designated sum-

---

1. Detroit Diesel and North Manchester have filed a cross-appeal, claiming that if summary judgment was improperly entered then the trial court also erred in dismissing defendant PTI Industries, Inc. from the lawsuit. Given our resolution of this appeal in Detroit Diesel's and North Manchester's favor we need not reach the issues raised on cross-appeal.

mary judgment materials establish that the pattern was first placed into the stream of commerce more than ten years before Bloemker's accident, although the exact date is also unknown.

Bloemker filed a two-count complaint against Detroit Diesel, Penske Corporation, PTI Industries, and North Manchester. Count I alleged negligence. Count II alleged that the defendants created and maintained a nuisance. Defendant Penske Corporation was subsequently dismissed from the action, with prejudice, pursuant to Bloemker's motion. The trial court also granted Bloemker's motion to dismiss PTI Industries, with prejudice, over the remaining defendants' objection.

Detroit Diesel and North Manchester each filed a motion for summary judgment, claiming that: 1) the pattern did not constitute a nuisance; 2) the statute of repose contained in Indiana's Product Liability Act (the Act)[2] barred any claim based upon a defect in the pattern; and, 3) they did not owe Bloemker a duty upon which to base a negligence action. In response to the defendants' motions, Bloemker voluntarily dismissed the nuisance action. With respect to the negligence count, Bloemker argued that his claim was not subject to the statute of repose because the claim was not a product liability action, and that each defendant owed him a duty to inspect the pattern and to warn him of the defect in the pattern's core, which duty arose out of the defendants' bailment of the pattern to Bloemker's employer. The trial court granted Detroit Diesel's and North Manchester's motions without stating the theory or theories upon which its judgment was based.

## DISCUSSION AND DECISION

### I. Application of Statute of Repose

The statute of repose for product liability actions is set forth in IC 33–1–1.5–5 (1990 Supp.) which provides:

"(a) This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–1–2–5 [legal disabilities], it applies in any product liability action in which the theory of liability is negligence or strict liability in tort.

"(b) Except as provided in section 5.5 of this chapter [asbestos-related injuries], a product liability action must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer. However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues."

Bloemker contends that his claim does not fall within the Act, and, therefore, is not subject to the statute of repose, citing *Stump v. Indiana Equipment Co.* (1992), Ind.App., 601 N.E.2d 398, *trans. denied.* In *Stump*, the plaintiff was a grading machine operator. He was injured when the grader unexpectedly began to move while the plaintiff stood beside it. Although the grader was equipped with a neutral safety switch designed to prevent the machine from starting while in gear, it was determined that the starter system had been rewired to avoid this safety switch.

In *Stump*, we identified two areas of inquiry for determining whether the statute of repose applies to a plaintiff's claim. First, the plaintiff's claim must constitute a "product liability action," and second, the defendants must be considered "sellers." *Id.* at 401–02.

■ To constitute a product liability action, the plaintiff's claim must allege a "defect which existed at or before the time the product was delivered by the seller to the initial user or consumer." *Id.* at 401. In *Stump*, we determined that the plaintiff's claim did not constitute a product liability action because the defect of which he complained, the rewiring of the starter system, indisputably occurred after the grader was delivered to the initial user or consumer.

■ Unlike *Stump*, the alleged defect here, whether the lack of adequate vent holes or the presence of sand in the sealed cavity, was created at the time of manufacture. If the defect was created at the time of manu-

2. IC 33–1–1.5–1 to –8.

facture, then, by logical inference, the defect existed before the pattern was delivered by the seller to the initial user or consumer. This being so, Bloemker's claim constitutes a product liability action. *Id.*

In reaching this conclusion, we reject Bloemker's contention that his claim is not a product liability action because the pattern is not a product. Bloemker asserts that the transaction was a bailment in which the defendants provided him with an item for repair, not a product. A product, within the meaning of the Act, is "any item or good that is personalty at the time it is conveyed by the seller to another party." IC 33–1–1.5–2 (1988 Ed.). It is undeniable that the subject of Bloemker's cause of action is and always was an item of personalty. The fact that the pattern reached Bloemker via a bailment does not change the pattern's classification as a product.

We also reject Bloemker's contention that the pattern cannot be considered a product because Detroit Diesel and North Manchester were bailors, not sellers. The defendants' status does not dictate whether the pattern may be classified as a product. Were it otherwise, then the definition of product would focus on the status of the item at the time of conveyance to the plaintiff rather than at the time the item is conveyed to "another party." The item is a product so long as it is personalty at the time the seller, whomever that may be, conveys it to another party, regardless of whether that other party is the plaintiff.

While the defendants' status does not dictate the pattern's classification, it is determinative of the second area of inquiry, namely, whether the defendants are sellers. *See Stump*, 601 N.E.2d at 402. As we stated in *Stump*:

"The 'seller' of [a] defective product is immune from suit after the prescribed period of time has elapsed. . . .

"As to who may claim the defense, the definition of 'seller', i.e., 'person engaged in business as a manufacturer, a wholesaler, a retail dealer, a lessor, or a distributor,' I.C. 33–1–1.5–2 (Burns Code Ed.1992), is broad enough to include within its scope any party who was an essential part of the stream of commerce which resulted in delivery to the initial user or consumer." *Id.* Bloemaker contends that conveyance of the pattern to his employer was nothing more than a bailment for repairs; Detroit Diesel and North Manchester are not sellers because they are not engaged in supplying patterns as a regular part of their business. We agree.

Detroit Diesel and North Manchester may not take advantage of the defenses available under the Act unless the Act was intended to extend to a bailment situation. Detroit Diesel and North Manchester maintain that such an extension is warranted given our recognition in *Stump* that the definition of seller be "broad." *See id.* Detroit Diesel and North Manchester also claim that including bailments within the Act's scope is supported by the following:

"[I]n Indiana a commercial sale is not an essential element of recovery under [Restatement (Second) of Torts] § 402A. The test is whether a defendant injected a harmful defective product into the stream of commerce. Therefore, liability under § 402A will attach to one who places such a product in the stream of commerce by sale, lease, *bailment*, or other means."

*Gilbert v. Stone City Constr. Co.* (1976), 171 Ind.App. 418, 422, 357 N.E.2d 738, 742 (citations omitted; emphasis added).

*Gilbert*, however, does not control the question before us because the opinion was issued prior to the enactment of the Product Liability Act in 1978. The 1978 Act was expressly intended to be a codification and restatement of Indiana's common law of product liability. *See* 1978 Ind.Acts, Pub.L. No. 141, § 28; *Koske v. Townsend Engineering Co.* (1990), Ind., 551 N.E.2d 437, 442; *Thiele v. Faygo Beverage, Inc.* (1986), Ind. App., 489 N.E.2d 562, 587, *trans. denied.* Common law principles remain applicable only to the extent they were included in the provisions of the 1978 Act by express terms or by unmistakable implication. *Koske*, 551 N.E.2d at 442.

As originally defined, the term "seller" "include[d] a manufacturer, a wholesaler, a retail dealer, or a distributor." 1978 Ind.

Acts, Pub.L. No. 141, § 28. In 1983, the definition was amended so that a "seller" "means a person engaged in business as a manufacturer, a wholesaler, a retail dealer, *a lessor*, or a distributor." 1983 Ind.Acts, Pub.L. No. 297, § 2 (emphasis added). Inclusion of the emphasized "lessor" was an addition to the new definition. "Bailor," however, is conspicuously absent from the new definition, and the term has been excluded from the definition of seller since the Act's inception in 1978. Therefore, we hold that bailors are not sellers within the meaning of Indiana's Product Liability Act.

Such a conclusion is especially appropriate where, as here, the defendants are not engaged in the business of selling the product. In *Lucas v. Dorsey Corp.* (1993), Ind.App., 609 N.E.2d 1191, *trans. denied*, we considered the question of who qualifies as a seller within the meaning of the Act. As stated in *Lucas:*

> "The Products Liability Statute applies to a seller of a defective product provided the seller is 'engaged in the business of selling such a product.' *See* IND.CODE § 33–1–1.5–3(a)(1). However, the occasional seller who is not engaged in that activity as part of his business is not liable in products liability. *Perfection Paint v. Konduris* (1971), 147 Ind.App. 106, 117, 258 N.E.2d 681, 686."

609 N.E.2d at 1202. Relying on these principles, we determined that a genuine issue of material fact existed as to whether the defendant Dorsey was a seller of digger derricks. Based upon the facts then before us, we refused to hold "that the sale of only nine (9) derricks, four (4) of which were returned, as a matter of law negates a finding that Dorsey was a seller." *Id.*

Unlike *Lucas,* the present case involved an isolated transfer of a single product. Detroit Diesel and North Manchester were not engaged in the business of selling patterns, but were engaged in the business of manufacturing and selling diesel engines and diesel engine parts. Their one-time transfer of the pattern for the purpose of obtaining modifications does not warrant classifying them as sellers for purposes of the Act. As nonsellers, neither Detroit Diesel nor North Manchester was entitled to assert the statute of repose as a defense to Bloemker's claim.

This result finds support in our recent recognition of the Act's purpose:

> "The legislation was designed to relieve those parties involved in introducing products into the stream of commerce from open-ended liability premised upon the product's condition at the time of entry into the marketplace. However, it does not follow that *all* parties are absolved of liability for *all* claims of negligence concerning a particular product when more than ten years has elapsed since that product was delivered to the initial user. Our legislature simply could not have intended such a wide-sweeping result. Were we to so totally absolve all parties of liability, we would remove an important incentive for the use of care when inspecting, handling, and maintaining products that are more than ten years old. Such an interpretation does not comport with sound public policy."

*Stump,* 601 N.E.2d at 402 (emphasis in original). Detroit Diesel and North Manchester were not entitled to summary judgment on their statute of repose defense.

## II. Duty to Inspect

The tort of negligence consists of three elements: 1) a duty owed to the plaintiff by the defendant; 2) a breach of that duty by the defendant; and, 3) injury to the plaintiff proximately caused by that breach. *J.A.W. v. Roberts* (1994), Ind.App., 627 N.E.2d 802, 808. The first element, the existence of a duty owed to the plaintiff, is usually a question of law for the court's resolution. *Wickey v. Sparks* (1994), Ind. App., 642 N.E.2d 262, 265, *trans. denied.* Although summary judgment is rarely appropriate in a negligence action, *Osmulski v. Becze* (1994), Ind.App., 638 N.E.2d 828, 838, it may be suitable to determine the legal question of whether a duty exists. *Brewster v. Rankins* (1992), Ind.App., 600 N.E.2d 154, 156. Absent a duty, there can be no breach, and thus, no basis for recovery under a negligence theory. *Hawn v. Padgett* (1992), Ind. App., 598 N.E.2d 630, 632.

Bloemker claims that Detroit Diesel and North Manchester owed him a duty which arose out of their bailment of the pattern to Bloemker's employer. He relies on sections 388 and 392 of the Restatement (Second) of Torts which impose a duty upon those who supply chattels to others. Restatement section 388 provides:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

Restatement section 392 provides:

"One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied or,

(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it."

Section 392 differs from section 388 because in addition to the duty to warn, it imposes a duty on the supplier "to make a proper inspection of the chattel which would disclose the existence of a defect. Such a duty is imposed on the supplier because the chattel

is to be used for the supplier's business purpose." *Bogard v. Mac's Restaurant, Inc.* (1988), Ind.App., 530 N.E.2d 776, 779, *trans. denied.* Despite this court's isolated references to sections 388 and 392, *see id.* and *McGlothlin v. M & U Trucking, Inc.* (1995), Ind.App., 649 N.E.2d 135, neither section has been adopted as the law in this state. *See Stapinski v. Walsh Constr. Co.* (1979), 272 Ind. 6, 11, 395 N.E.2d 1251, 1254; *Rogers v. Grunden* (1992), Ind.App., 589 N.E.2d 248, 254, *trans. denied.*

For the first time, this court addressed the question of whether a duty to inspect exists on the part of a supplier of chattels furnished for the use of another in *McGlothlin*, 649 N.E.2d 135. There, the plaintiff was injured while he was loading merchandise into a trailer whose landing gear collapsed. The plaintiff sued the owner of the trailer and the company who leased the trailer to the plaintiff's employer. Both defendants routinely inspected the trailer as required by a railroad membership agreement between them and by industry standards.

We articulated the question in *McGlothlin* as whether, assuming a latent defect existed in the landing gear, the defendants had a duty to discover such a latent defect. *Id.* at 139. In determining that no such duty existed as a matter of law, we relied upon *Stump*, 601 N.E.2d 398, which acknowledged that while there is a duty to inspect and discover patent defects in used equipment, there is no duty to discover " 'latent defects which by their very nature could not be discovered by a reasonable and customary inspection.' " *McGlothlin*, 649 N.E.2d at 139 (quoting *Stump*, 601 N.E.2d at 406 (quoting *Masker v. Smith* (1981), Fla.Dist.Ct.App., 405 So.2d 432, 433–34)). We concluded that "it would be inconsistent with Indiana law and public policy to hold that [the defendants] had a duty to discover latent defects in the trailer landing gear that would not have been revealed by a reasonable and customary inspection." *McGlothlin*, 649 N.E.2d at 139–40.

■ Both *McGlothlin* and *Stump* defined the scope of the duty owed in terms of the facts and circumstances surrounding the inspection, including the nature of the defect.

If the defect is patent, there is a duty to inspect, discover and warn of that defect. If, the defect is latent, however, there is no duty to discover such defects, *Stump*, 601 N.E.2d at 406, and consequently, no duty to inspect for such defects. *McGlothlin*, 649 N.E.2d at 139–40.

Defining the duty owed in terms of the nature of the defect overlooks the distinction between the existence of a duty and the breach of that duty. The duty would appear to be one of inspection in the first instance because there is no way of knowing the nature of the defect as latent or patent without inspection. The nature of the defect becomes relevant only when determining whether the duty to inspect was breached. Breach of the duty would arise where a supplier of a chattel fails, upon reasonable inspection, to discover a patent defect. Where a latent defect exists, there would be no breach for failing to discover the defect so long as a reasonable inspection was performed.

Our supreme court, however, has taken a different approach. In *Evansville Am. Legion Home Ass'n v. White* (1958), 239 Ind. 138, 154 N.E.2d 109, our supreme court considered whether a duty of inspection arises when one supplies chattels for another's use. In that case, the plaintiff was injured when a folding chair collapsed while she was sitting on it at a bingo game conducted by the defendant. A post-accident inspection revealed that the curl on the end of the rivet holding the two right legs of the chair together had been recently sheared or broken off. The plaintiff argued that the defendant should have performed a more thorough inspection and testing of the chairs before making them available for its patron's use. The supreme court responded:

> "There is no independent duty to make inspection upon which negligence can be based. The duty to inspect arises from knowledge of possible defects or their reasonable probability."

*Id.*, 239 Ind. at 141, 154 N.E.2d at 111.

This holding is incompatible with contemporary supreme court precedent discussing the considerations to be made when imposing a duty on a defendant. Most fundamental, is the principle that a duty arises out of some relationship existing between the parties. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995. Our supreme court applied this principle in examining the relationship between a landowner and those who enter upon his land, and the resulting extent of duty owed by the landowner in *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637. The landowner owes the highest duty to an entrant classified as an invitee, *id.* at 639, which classification includes business visitors. *Id.* at 642 (adopted Restatement (Second) of Torts § 332 which classifies an invitee as either a public invitee or a business visitor). Indiana courts have embraced Restatement (Second) of Torts § 343 to define the duty owed by the landowner to an invitee. *Id.* at 639–40. Section 343 imposes liability on a landowner for physical harm incurred by an invitee and caused by a condition on the land if, among other things, the landowner "knows or by the exercise of reasonable care *would discover* the condition." *Id.* at 640 (emphasis added). The term "discover" implies that an inspection precedes it. Thus, if a defect exists on land, and the owner fails to reasonably discover it, then the owner is liable for any physical injuries caused to his business visitors.

There is no meaningful distinction between a person invited upon someone's land for a business purpose, and a person to whom someone entrusts a chattel for a business purpose. An injury arising out of the condition of land should be treated no differently than an injury arising out of the condition of a chattel located on that land. If Bloemker had been invited onto North Manchester's or Detroit Diesel's property to make the pattern modifications, and was injured by a condition on the land that North Manchester or Detroit Diesel either knew about or should have known about, then Bloemker could recover for his injuries. Bloemker should receive no less protection against harm merely because the injuries associated with the pattern modifications occurred away from the defendants' premises.

Our supreme court, however, has not yet spoken to the effect of its more recent opinions on the duty owed by one who supplies

chattels to another for the supplier's business purpose. For this reason, we must follow the existing precedent of *Evansville American Legion*. That case unmistakably proclaims that one who supplies a chattel to another has no independent duty to inspect it without knowledge or a reason to know of any defects. Nothing in the evidentiary materials designated to the trial court establishes that either North Manchester or Detroit Diesel had knowledge or a reason to know of any defect existing in the pattern. Consequently, under the supreme court's holding in *Evansville American Legion*, they had no duty, and, thus, were not negligent.

Affirmed.

SULLIVAN, J., concurs with separate opinion.

RILEY, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring.

I fully concur in the opinion of the majority which holds that the ten year statute of repose is not applicable to the case before us. I further agree with Part II of the opinion to the extent that it observes that there is a decided distinction between the existence, under the circumstances, of a duty to inspect and a breach of that duty. As noted, a failure to discover a defect which is not discoverable by reasonable inspection does not constitute breach of the duty of reasonable care.

The dissenting opinion by Judge Riley prompts some additional observations. In Indiana, we do not seem to agree upon any focused test to determine whether a tort duty exists with respect to a given defendant *vis a vis* a given plaintiff. Most frequently it is stated that whether a given defendant owes a duty to a given plaintiff depends upon the relationship between the two. *See, e.g., Stump v. Commercial Union* (1992) Ind., 601 N.E.2d 327, 332; *Webb v. Jarvis* (1991) Ind., 575 N.E.2d 992, 995, *reh'g denied* ; *Gariup Construction Co., Inc. v. Foster* (1988) Ind., 519 N.E.2d 1224, 1227. In *Gariup*, however, Justice Dickson speaking for the Court, noted that the duty determination is "not without difficulty" and in quoting from a well-

regarded treatise concluded that " '[n]o better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.' " 519 N.E.2d at 1227. Such rationale virtually defies application with any degree of accuracy or predictability. *See Jay Tidmarsh, Tort Law: The Languages of Duty*, 25 Ind.L.Rev. 1419 (1992). Perhaps it is for this reason that we have in the past articulated the principle that:

> "The law imposes but one common law duty and that duty is to use due care (citation omitted). The duty is the same for all relations, without regard to the facts of the case."

*South Eastern Indiana Natural Gas Co., Inc. v. Ingram* (1993) 1st Dist.Ind.App., 617 N.E.2d 943, 953. As a corollary to this premise we have said:

> "[T]he substantive law establishes the standard of care which must be met, i.e., reasonable care. The standard is a fixed one and is independent of the conduct of others but the conduct required of the individual to measure up to the fixed standard varies depending upon the nature of the duty owed and the surrounding circumstances." *Walters v. Kellam & Foley* (1977) 2d Dist., 172 Ind.App. 207, 360 N.E.2d 199, 214, *reh'g denied.*

Be that as it may, and couched in whatever terminology one may choose, the failure to discover a defect in a product, not discoverable by the exercise of reasonable care under the circumstances does not give rise to liability under a theory of common law negligence.

I am unable, however, to fully subscribe to the majority's analogy to premises liability on the part of a landowner. I recognize that the *Webb v. Jarvis* test focuses upon the relationship of the parties, as does the test for the landlord-invitee duty. However, I see no reason to make such analogy except to the extent that liability upon the part of a landowner arising out of some "defect" existent upon the land bears some superficial relationship to the rationale which would impose liability upon the part of one who delivers a defective chattel to a person for a

business purpose. As noted by Tidmarsh, *supra*, 25 *Ind.L.Rev.* 1419, 1428:

"[T]his [landlord liability] status-driven test has come under increasing attack for its arbitrary character and its finespun distinctions. Consequently, it has been replaced in a substantial number of jurisdictions with a general duty of reasonable care under the circumstances."

Our Supreme Court's decision in *Evansville American Legion Home Association v. White* (1958) 239 Ind. 138, 141, 154 N.E.2d 109, 111, is wholly compatible with the "reasonable care under the circumstances" test. That decision need not have been couched in terms of "no independent duty to make inspection[.]"

In any event, I fully concur in the decision which affirms the summary judgment.

RILEY, Judge, concurring in part and dissenting in part.

I concur on Issue I and dissent on Issue II. To define standards of conduct in terms of "duty" pigeonholes the concept of negligence—a concept which by its very definition, depends entirely on the relationship of the parties and the facts of each case. Instead, it seems more logical to define "duty" in terms of the relationship of the parties and the legal obligation or standard that is required to meet that obligation. In other words, "duty" is a question of whether the defendants, Detroit Diesel and North Manchester are under any obligation for the benefit of Bloemker.

Courts have generally recognized that public policy and social considerations, as well as foreseeability, are important factors in determining whether a duty will be held to exist in a particular situation ... In fixing the bounds of duty, not only logic and science but also policy play an important role, for, as it has been said, the imposition of a duty is an exercise of judicial policy making.

57A Am.Jur.2d Negligence § 87.

The late Dean Prosser expressed this view as follows:

There is a duty if the court says there is a duty; the law, like the Constitution, is what we make it. Duty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the essential question ... The word serves a useful purpose in directing attention to the obligation to be imposed upon the defendant, rather than the causal sequence of events; beyond that it serves none.

*Sinn v. Burd* (1979), 486 Pa. 146, 404 A.2d 672, 681–682, (citing, Prosser, *Palsgraf Revisited*, 52 Mich.L.Rev. 1, 14–15 (1953)).

In light of the wisdom of Dean Prosser's viewpoint, I find Sections 388 and 392 of the Restatement (Second) of Torts to be applicable to the instant case. These sections recognize the relationship between the injured party and the supplier of chattels as the basis for imposition of a duty to use due care.

In *Mitchell v. Smith* (1965), Ind.App., 211 N.E.2d 809, we recognized the duty to inspect as part of the due care required in providing instrumentalities for doing work. We concluded in that case that recovery should be denied because a reasonable inspection would not have revealed the dangerous condition which caused the plaintiff's injuries. This is not the case here, however, because there is evidence contained in the record that a reasonable inspection of the pattern by the defendants could have revealed its dangerous condition.

In order to find the defendants negligent in the present case, there must be evidence that the defect which caused the injury was known to the defendants prior to the accident, or that, in the exercise of ordinary or reasonable care, they ought to have known of the defect. It is a material question of fact whether the explosion was occasioned by a defect which a reasonable and proper inspection would have disclosed and that ordinary and reasonable care required an inspection to be made. Because a material question of fact exists, the summary judgment should be reversed.